## THE CHESAPEAKE CLUB OF ANNAPOLIS CITY *vs.* THE STATE OF MARYLAND.

*Corporation—Indictment—Act of 1882, ch. 112, known as the "Local Option Law" of Anne Arundel County—Refusal of Witness to answer—Privilege of Witness—When Witness may claim his Privilege.*

An indictment will lie against a body corporate for violating the provisions of the Act of 1882, ch. 112, the Act in terms expressly declaring that all corporations or associations violating the law, shall be liable to indictment and punishment.

Section 3, of the Act of 1882, ch. 112, known as the "Local Option Law" of Anne Arundel County, declares that it shall not be lawful for any person or persons, house, corporation, company or association, to sell, *directly or indirectly, at any place,* or to give away at his, her, their, or its *place of business,* any spirituous, fermented or intoxicating liquors, of whatever origin, or alcoholic bitters," after the 30th day of April, 1883. By section 4, it is declared, "That if any person or persons, house, company, corporation or association, or body corporate, shall sell, *directly* or *indirectly,* at any place, or give away at his, her, their, or its *place of business,* any spirituous or fermented liquors, or alcoholic bitters, or intoxicating drinks of any kind, within the limits of Anne Arundel County, after the 30th of April, 1883, he, she, or they shall, on conviction thereof, forfeit and pay," &c. And in the conclusion of this section it is provided, "that in case of any violation of any provision of this Act by any company, corporation or association, each or any member of such company, corporation or association, *shall be liable,* and shall suffer imprisonment as prescribed in this Act for persons violating the same." By section 5, it is provided, "that no person or persons, company, *corporation or association,* shall deposit or have in his, her, their or its *possession,* any spirituous or fermented liquors, or alcoholic bitters, or intoxicating liquors of any kind, *with intent to sell, or give away* the same at his, her, their, or its place of business, in violation of law, or with intent that the same *shall be sold or given* away by any person, in violation of law, or in aid of any person or persons for such purposes;" any such persons to be subject to like

Chesapeake Club *vs.* State.

punishment as that prescribed by the fourth section of the Act. The Chesapeake Club is a body corporate, incorporated under the general incorporation law of the State. The objects of the incorporation professedly being for literary, dramatic, musical and social purposes. A constitution and set of by-laws were adopted by the association, and thereby provision was made for the admission of new members, and a number of members, in addition to those originally incorporated, were introduced into the association. The regular place of meeting of the Club, and for the transaction of its business was in Annapolis. The Club was indicted for violating the provisions of the " Local Option Law " of Anne Arundel County. The seventh count charged that the Club " unlawfully did have in its possession certain spirituous and fermented liquors, to wit, whiskey and lager beer, *with intent unlawfully to sell the same* at the county aforesaid." And the eighth count charged that the Club " unlawfully did have in its possesion certain fermented and spirituous liquors, to wit, whiskey and lager beer, *with intent unlawfully to give away* the same at its place of business, at the county aforesaid." Liquors purchased with the funds of the Club were kept in the club room, and dispensed to the members upon application, by a steward regularly appointed by the corporation. HELD :

1st. That the Club was guilty of a violation of the provisions of the Local Option Law of Anne Arundel County, under which the indictment was framed, in providing and keeping in its possession, at its club rooms, spirituous and fermented liquors, with the intent and for the purpose of supplying the same to its members, either by sale or gift, as such liquors might be called for or desired.

2nd. That a member of the Club, being liable as such to prosecution for any participation in the violation of the statute, could not be compelled to testify to facts that tended to prove the guilt of the association.

The privilege accorded to a witness of declining to make any disclosure that might be used for his crimination, is a personal privilege, and must be claimed by him upon oath, and neither the party to the cause, nor the counsel engaged, will be permitted to make the objection.

The mere statement of the witness on oath that he *believes* that the answer to the question asked will tend to criminate him, will not suffice to protect him from answering, if from all the circumstances surrounding the case the Court be satisfied that the answer will have no such effect as that claimed by the witness. It is for the

Court to decide whether the privilege is well and *bona fide* claimed or not.

After a witness has been sworn he may claim his protection at any stage of the inquiry, and upon his so doing he cannot be compelled to answer any additional question that would tend to criminate him.

This case distinguished from the case of *Seim, et al. vs. The State*, 55 *Md.* 566.

APPEAL from the Circuit Court for Anne Arundel County.

The case is stated in the opinions delivered.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, ROBINSON, IRVING, and BRYAN, J.

*John Ireland*, and *S. Thomas McCullough*, for the appellant.

*James M. Munroe, State's Attorney for Anne Arundel County*, and *Charles B. Roberts, Attorney-General*, for the appellee.

ALVEY, C. J., delivered the following opinion, in which Judges STONE and IRVING concurred:

The indictment in this case is for the alleged violation of the provisions of the statute of 1882, ch. 112, known as the "Local Option Law" of Anne Arundel County, and which was duly submitted to and adopted by the popular vote of that county, in December, 1882. It has been in force since the 30th of April, 1883.

The Act first provides for submitting the question of its adoption to popular vote, and in the event of its having a majority of votes in its favor, it then declares, by section 3, that it "shall not be lawful for any person or persons,

house, corporation, company or association, to sell, *directly or indirectly, at any place,* or to give away at his, her, their, or its *place of business,* any spirituous, fermented or intoxicating liquors, of whatever origin, or alcoholic bitters," after the 30th day of April, 1883. By section 4, it is declared "That if any person or persons, house, company, corporation or association, or body corporate, shall sell, *directly or indirectly, at any place,* or give away at his, her, their or its *place of business,* any spirituous or fermented liquors or alcoholic bitters, or intoxicating drinks of any kind, within the limits of Anne Arundel County, after the 30th of April, 1883, he, she, or they shall, on conviction thereof, forfeit and pay," &c. And in the conclusion of this section it is provided that "in case of any violation of any provisions of this Act by any company, corporation or association, each or any member of such company, corporation or association, *shall be liable,* and shall suffer imprisonment as prescribed in this Act for persons violating the same."

Then follows, by section 5, what is most material in this case. It is provided "that no person or persons, company, *corporation or association,* shall deposit or have in his, her, their or *its possession,* any spirituous or fermented liquors, or alcoholic bitters, or intoxicating liquors of any kind, *with intent to sell, or give away* the same at his, her, their, or its place of business, in violation of law, or with intent that the same *shall be sold or given* away by any person, in violation of law, or in aid of any person or persons for such purposes;" any such offender to be subject to like punishment as that prescribed by the 4th section of the Act.

The appellant is a body corporate, incorporated under the general incorporation law of the State, on the 15th of November, 1884. The objects of the incorporation professedly are for literary, dramatic, musical, and for other public social and literary purposes. What these other

public social purposes are the articles of association do not disclose. By the articles of association and certificate of incorporation the appellant is declared to have power "to adopt a constitution, and to make by-laws, rules and regulations, not contrary to the laws of the State. It appears that a constitution and set of by-laws have been adopted by the association, and thereby provision has been made, as it was competent to do, for the admission of new members, (*Ang. and Am. on Corp. secs.* 113, 114, 118;) and that a considerable number of members, in addition to those originally incorporated, have been introduced into the association. The association is denominated a club, and has its regular place of meeting, and for the transaction of its business, and that place is in Annapolis.

This corporation, thus formed, was indicted, tried, and convicted at the October Term of the Circuit Court for Anne Arundel County, 1884, upon charge of violating the provisions of the "Local Option Law;" and the case has been brought to this Court by an appeal, under the Act of 1872, ch. 316, from certain rulings of the Circuit Court upon questions of evidence that arose in the course of the trial.

The indictment contains eight counts; but the State having abandoned all but the two last, it is only necessary to refer to these latter counts in connection with the questions of evidence to be decided.

The seventh count charges that the appellant "unlawfully did have in its possession certain spirituous and fermented liquors, to wit, whiskey and lager beer, *with intent unlawfully to sell the same* at the county aforesaid." And the eighth count charges that the appellant "unlawfully did have in its possession certain fermented and spirituous liquors, to wit, whiskey and lager beer, *with intent unlawfully to give away the same at its place of business*, at the county aforesaid." It was upon these two counts that the appellant was convicted.

There was a demurrer entered to the indictment, and sought to be sustained, upon the ground that such an in-dictment would not lie against a body corporate. And while the question raised on the demurrer is not properly before the Court on this appeal, yet it is not improper to say that the Court below was entirely right in overruling the demurrer, as the statute in terms expressly declares that all corporations or associations violating the law shall be liable to indictment and punishment.

There are several bills of exception, but at the founda-tion of all the questions raised by them, except the ques-tions raised by the first and second, is the broad general question, whether or not it be a violation of the provisions of the statute under which the indictment was found, for the incorporated association, the present appellant, to provide and keep in its possession, at its club-rooms, spirituous and fermented liquors, with the intent and for the purpose of supplying the same to its own members, as such liquors may be called for or desired, either on checks or otherwise, as the association may provide? If this question be resolved in the negative many of the questions raised on the offers of evidence become quite immaterial to the final determination of the case. That general question, therefore, will be first considered.

In the construction of a statute the Court should always keep in view the great and leading objects sought to be accomplished by its enactment. Where the objects are apparent, no reason can possibly justify a Court in having recourse to refined and subtile distinctions in order to take a particular case out of the operation of the statute. Here, as we have seen by the recital of the terms of the statute, the language is as broad and comprehensive as could well be employed. In express terms, it applies as well to all corporations and associations as to all persons; and the great object in view is the absolute prohibition of all dis-pensing of intoxicating drinks, either by sale or gift,

except under special conditions that do not exist here. Intoxicating liquors cannot be sold directly or indirectly, nor can they be given away at the place of business of the donor. The place and only place of business of the appellant is the club room, where the liquors are kept and dispensed to the members upon application. It is not pretended that the liquors were bought by any individual member of the club on his own account and kept by him, nor by all the members jointly in their personal capacities; but the appellant, by its constitution and by-laws, has provided the ways and means by which to raise funds, that is, by entrance fees and by assessments, and these funds when paid over are the funds of the corporation in the hands of its treasurer. The liquors and other articles purchased for the benefit of the club with the funds thus raised, are dealt out by a steward or janitor regularly appointed by the corporation, and who is its agent for that purpose. Therefore, whatever is done by him, within the scope of his authority, is the act of the corporation, and for which it is liable. This being the case, why is not the liquor, thus supplied, disposed of, either by sale or a gift, according to the conditions of its delivery, to the particular member receiving it from the agent of the corporation? It is supposed that because the members are joined in an association for social and other purposes, no matter how numerous and indiscriminate their membership may be, that they may do as among themselves with entire impunity what individuals in their relations and dealings with their fellow-members of the community may not do under the statute. But is there any substantial ground, discoverable either in the letter or policy of the statute, for any such distinction? The reason and good sense of the distinction is not perceived, and, in view of the manifest object and policy of the statute, such distinction is wholly inadmissible. If the liquors, being the property of the corporation, be kept to

Chesapeake Club *vs.* State.

be given to the members at the club-room, it is in violation of the letter and spirit of the Act; and if it be sold to the members, either for money or for checks previously purchased, it is equally a violation of the law, for by its terms the statute declares that liquors shall not be sold either directly or indirectly. The framers of the statute would seem to have been studious to avoid the possibility of allowing any combination or contrivance whereby the objects of the law could be defeated. All means, whether direct or indirect, tending to defeat or evade the provisions of the Act, are prohibited; and to say that a corporation or any association, whether formed for the particular object or otherwise, can, with entire impunity, dispense liquors to its members at pleasure, according to any artful device that may be adopted, would be simply to disregard not only the terms of the statute, but the manifest objects sought to be effected by the Legislature.

It is argued that the case of *Seim vs. The State*, 55 *Md.*, 566, has virtually settled this case. But it does not by any means follow from that decision that this case is determined. In the first place, the language of the Sunday law of 1866, under which the case of *Seim vs. The State* was decided, is altogether different from that of the Act of 1882, ch. 112; and the decision in that case would seem to have been in the mind of the framers of the Act of 1882, ch. 112; for by the latter Act terms are employed more comprehensive, especially those making the Act applicable to associations and corporations, than are to be found in the Sunday law of 1866. The great object of the Sunday law is to preserve the Sabbath from desecration, and in the case referred to the law was construed specially with reference to the existing license law of the State. It was thought that the case was not within the meaning of the Act of 1866, because the license laws had never been applied to social clubs. In other words, because the license laws had never been construed to apply to such

clubs, the Sunday law was supposed not to be intended to apply to them. Whether the reasoning was sound or unsound in the case to which it was applied, it is very clear that it can have no application whatever to this case. If it were held that the appellant is not within the purview and operation of the Act of 1882, ch. 112, such construction would go far towards utterly defeating the Act. For if one association or corporation could be allowed to do with impunity what the appellant has done, according to the verdict of the jury, any number might be formed with the right to do the same thing; and the consequence might be that a large portion of the community would enroll themselves as members of associations or incorporated clubs to do by corporate combination what they would not be allowed to do as individuals. Moreover, such construction, if adopted, would not only virtually defeat the Act under consideration, but it would open the door wide to the use of the same means to frustrate and defeat all the local option laws of the State. The Legislature certainly never for a moment designed that it should be in the power of any portion of the commnnity, by combination or association, to effect an evasion and completely foil the positive mandates of the law; and no construction of the Courts should give aid to the production of any such result.

The appellant, upon this interpretation of the statute, having no right or authority to keep in its possession to be supplied to its members, either by sale or gift, any intoxicating liquors, the first question on the evidence is as to the right of the prosecution, and the power of the Court, to require one of the members of the club or association, as a witness, to testify to facts that tended to prove the guilt of the appellant. This question is presented by the first bill of exception.

The witness Taylor testified that he was a member of the club, and he stated, without objection, either from

Chesapeake Club *vs.* State.

himself or the appellant, that he had visited the rooms of the appellant as a member of the club, and had gotten whiskey and beer there. Upon further examination by the State, the witness was asked whether he had ever seen any liquor there. To this question the appellant objected, and the witness also objected, upon the ground that his answer to the question might tend to criminate him. But the objection, both on the part of the appellant and of the witness, was overruled by the Court, and the witness was required to answer the question. He then stated, in answer to the question, that he had seen whiskey and lager beer in the club-rooms, but did not know where the same were kept; that the janitor had charge of the rooms and all the property of the club, and waited on the members. And in answer to a further question, he stated that in one of the club-rooms there was a counter resembling an ordinary bar; it only lacked the gaudy show of a bar.

With respect to the objection interposed by the appellant, it is very clear there was no ground for that, in view of the construction placed upon the statute and the liability of the appellant thereunder. The testimony given by the witness was not only admissible, but was very material to the questions at issue. But with respect to the privilege claimed by the witness that presents a different question.

The witness had testified that he was a member of the corporation or association, and being so, he would be liable to prosecution if he had had any participation in the criminal acts of which the association was charged. *Regina vs. Railway Co.,* 9 *Q. B.,* 319. It has been argued that the statute makes any member of the association or corporation liable to punishment simply upon the conviction of the corporation, and hence it was error to compel the witness to testify, as thereby he was compelled to give evidence against himself in a criminal case, con-

trary to the 22d Art. of the Bill of Rights of this State. If such were really the provision of the statute it would simply be a nullity; for clearly the Legislature could possess no power to make a person liable to punishment without trial and full opportunity of defence. The witness was not a party to the indictment, and no judgment thereon could be rendered against him personally. I do not, however, understand the Legislature as attempting to authorize any such unwarrantable proceeding. The provision of the statute is, that in case of the violation of any of its provisions by any company, corporation or association, each or any of its members "*shall be liable,* and shall suffer imprisonment as prescribed in the Act for persons violating the same." That is, as I understand it, the members of the offending corporation or association shall be liable to prosecution, conviction and punishment, as well as the corporation itself—the corporation to be punished by fine, and the members thereof, upon conviction, by imprisonment. This, I think, is the fair and reasonable interpretation of the clause of the statute just quoted, and I do not think it would be just to the Legislature to put any other construction upon the language employed.

The witness, however, as a member of the corporation, being liable to prosecution for any participation in the violation of the statute, was entitled to insist upon his privilege of being exempt from making any disclosure that might be used for his crimination. This is a personal privilege of the witness, and must be claimed by him upon oath, as was done in this case, and consequently, neither the party to the cause, nor the counsel engaged, will be permitted to make the objection. *Regina vs. Kinglake,* 11 *Cox,* 499; 2 *Phill. Ev.* (*9th Ed.*) 418; 2 *Tayl. Ev., sec.* 1319; 1 *Greenl Ev., sec.* 451. The mere statement of the witness on oath that he *believes* that the answer to the question asked will tend to criminate him, will not suffice

Chesapeake Club *vs*. State.

to protect him from answering, if from all the circumstances surrounding the case the Court is satisfied that the answer will have no such effect as that claimed by the witness. It is for the Court to decide whether the privilege is well and *bona fide* claimed or not, and therefore it must be able to see, from the surrounding circumstances, and the nature of the evidence sought to be elicited by the answer, whether reasonable ground exists for apprehending danger to the witness from his being compelled to answer. *Regina vs. Boyer*, 1 *Best & Sm.*, 311; 2 *Tayl. Ev.*, sec. 1311; 2 *Phill. Ev.*, (*9th Ed.*) 417, 418. Formerly it was thought, that if a witness chose to reply in part he might be compelled to answer everything relating to the transaction. But that doctrine has been solemnly overruled, and it is now finally settled in the English Courts, that after a witness has been sworn he may claim his protection at any stage of the inquiry, and upon his so doing he cannot be compelled to answer any additional question that would tend to criminate him. Therefore, notwithstanding the witness had testified without objection that he had gotten whiskey and beer at the club-rooms, he was entitled, upon further examination, to insist upon his privilege as to any additional fact that was sought to have disclosed by him, whereby he might criminate himself. *Regina vs. Garbett*, 1 *Den. Cr. C.*, 236; 2 *Tayl. Ev.*, sec. 1319; 1 *Greenl. Ev.*, sec. 451; 1 *Whart. Cr. L.*, (*7th Ed.*) secs. 805, 806.

I think therefore that in overruling the objection of the witness, made under claim of privilege, and in requiring the witness to answer the question, the learned Court below fell into error. The facts stated by the witness, upon being compelled to answer the question, are of a character that would be material in support of a criminal charge against him, and such being the case, he ought not to have been required to answer the question.

But, with respect to the question raised in the second exception, that does not depend upon any such considera-

tion.   That is not a question of privilege claimed by the witness.   Welch, the witness, stated that he was a member of the club, but it does not appear that he claimed any privilege of exemption from giving testimony, upon the ground that his testimony might criminate him.   He was asked the question, whether he had ever seen any liquors at the club, to which the appellant objected ; but the objection was overruled, and rightly so.   The witness then proceeded to state that he had seen at the club-rooms cider, ginger ale, lager beer in a keg, and whiskey in a bottle or decanter ; and further, that he had seen whiskey and lager beer dealt out in the club rooms to various persons.   This testimony was certainly material, and the witness, claiming no privilege of exemption from giving the testimony, the Court was clearly right upon the principles already stated, in overruling the objection of the appellant interposed to the question propounded to the witness.

And in the view taken of the liability of the appellant upon the construction of the statute, all the other questions raised by the remaining exceptions, taken by the appellant, become quite immaterial to the defence.   The effort seems to have been to so shape the defence as to bring the case within the decision of *Seim, et al. vs. The State, supra ;* but as that decision, upon the construction of the statute here involved, can have no application to this case, the questions of evidence raised with a view to that decision become unimportant, and there was no error, therefore, in the several rulings of the Court, in excluding the evidence offered.   And, in my view of the case, it is only for the error in overruling the claim of privilege set up by the witness in the first bill of exception, that there should be any reversal.   The case, however, was heard by six Judges ; and while Judges IRVING and STONE concur with me in the foregoing opinion, the other three Judges hold that there should be reversal of the rulings for other

supposed errors. It results therefore that all the rulings are affirmed by a divided Court, except that stated in the first bill of exception, and in the reversal of that all concur.

> *Ruling in first exception reversed, and all others affirmed by a divided Court, and case remanded for a new trial.*

(Decided 23d April, 1885.)

BRYAN, J., delivered the following opinion, which was concurred in by Judges YELLOTT and ROBINSON:

The Chesapeake Club of the City of Annapolis, a body politic and corporate, was indicted for a violation of the Act of 1882, chapter 112. The indictment contained eight counts; but at the trial all of them were abandoned except the seventh and eighth. The seventh count charged the appellant with having in its possession within Anne Arundel County whiskey and lager beer, with intent unlawfully to sell the same; the eighth count was similar, except that it charged an unlawful intent to give away the whiskey and lager beer at its place of business. At the trial the State offered in evidence the appellant's certificate of incorporation. The fourth article of this instrument states the objects and purposes for which the incorporation is sought, as follows: "To enable the members as a corporation to hold the necessary property, and the more effectually to conduct the operations of a literary, dramatic and musical club, to purchase, lease and hold, and rent books, billiard tables, papers, periodicals, magazines and everything of a like nature which could contribute to the ends for which this incorporation is sought, for the use of the members, their friends and guests; to purchase, lease, rent and hold such lot or lots, building or buildings in the City of Annapolis, with such necessary furniture, fixtures and appurtenances

as may be suitable for holding and giving musical and theatrical performances, literary and scientific entertainments and lectures, and for other public social and literary purposes, to lease and rent such property as may be owned and held by the said club, together with the appurtenances thereto belonging, to such person as it shall deem proper, for the purposes of giving such entertainments or representations, or to employ or contract with persons for doing the same." In *Seim vs. State*, 55 *Maryland*, 566, where the question was as to the sale of liquor on Sunday by an incorporated club, this Court decided that where a voluntary association or club is united for social purposes, each member is joint owner of the property and assets, and is entitled to the privilege of partaking of the provisions and refreshments provided for the use of the members. And when these are furnished to him by the proper officer of the club, upon his paying into the common fund what is equivalent to the cost of the article furnished, and when what is so paid is expended in keeping up the supply for the use of the members, that this transaction is not a sale to the member by the corporation; and in the case mentioned, it was held that where a member of such a club obtained a glass of beer on Sunday, it was no violation of the Act of 1866, which prohibited the sale on that day of spirituous or fermented liquors, lager beer, wine, cider and other goods, wares and merchandise. We have been referred to other authorities which hold the same views; but this decision settles the law for this State. If in this case, therefore, the whiskey and beer which the appellant was charged with keeping, were kept for the purpose of furnishing it to members of the club, under the circumstances above stated, there would be no violation of the statute. We understand from the bills of exception, that this was the ground on which the defence was placed. The statute does not make it penal to drink intoxicating liquors. It enacts that no one shall sell them

within the limits of Anne Arundel County, or have them
in his possession for the purpose of sale ; and that no one
shall give them away at his place of business, or have
them in his possession for the purpose of so giving them
away.    But without any violation of the statute, a num-
ber of persons may buy liquors outside of the county for
their joint use, and bring them within the county and
drink them.    It was not the object of the statute to apply
to a case of this kind.

The State offered to prove by James B. Taylor that he
had seen liquor at the club-rooms of the appellant.    The
witness alleged that he was a member of the club,
although not named in the articles of incorporation ; and
he claimed a right to be excused from testifying, on the
ground that he might thereby criminate himself.    It was
supposed that the fourth section of the statute rendered
every member of the club liable to imprisonment, in case
the corporation should be convicted.    These are the words-
referring to this subject "in case of any violation of any
provisions of this Act by any company, corporation or
association, each or any member of such company, corpora-
tion or association shall be liable, and shall suffer im-
prisonment as prescribed in this Act for violating the
same."    Every person who violates the law is subject to
punishment, and it is no defence or mitigation of his con-
duct, that he was acting under the command of a corpora-
tion, association, or any other authority whatsoever.    For
instance, a person who unlawfully keeps liquor for sale
incurs the penalties of the law, even if he is acting as the
agent, officer or servant of a corporation.    The law does
not permit any dispensation to commit crimes.    But it is
contrary to the principles of the Declaration of Rights to
punish any man without a trial.    "Every man has a right
to be informed of the accusation against him ; to have a
copy of the indictment, or charge, in due time (if required)
to prepare for his defence ; to be allowed counsel ; to be

confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath ; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty." It is not in the power of the Legislature to infringe this right of the citizen. The conviction of the appellant, therefore, would not have authorized the punishment of the witness even if he were a member of the club. Therefore, if his claim to be excused from testifying rested on this ground, it was not well founded. But, as stated in the bill of exception, it is not restricted in this way, and we must consider the witness as alleging that his testimony would furnish evidence, which would tend to convict himself personally of a violation of this law. He ought, therefore, to have been excused from testifying, and we must disapprove of the ruling of the Court, which required him to give evidence. In making this decision the Court gave the opinion that under the appellant's charter, no power existed to increase the membership of the corporation by election, subscription, or otherwise, and, therefore, that the protection claimed could be granted only to the corporators named in the articles of incorporation, and that the witness not being one of such corporators was bound to testify. As this construction of the powers of the corporation was the basis of every ruling of the Court in the different bills of exception, it becomes necessary to examine it. This corporation was formed under the general law contained in the fortieth Article of the Revised Code. The certificate was signed and sealed by five persons, and the existence of the corporation was limited to the period of forty years. The statute requires that the certificate should contain the names and residences of the applicants ; the proposed name of the corporation; the object or purposes for which incorporation is sought; the time of its existence, which must not exceed forty years, and the

articles, conditions and provisions, under which the incorporation is formed; the place where its operations are to be carried on; the amount of capital stock (if any); the number of shares (if any); and the number of trustees, directors or managers, and their names, who shall manage the concerns of the corporation for the first year. When this certificate has been signed, sealed, acknowledged, approved and recorded in the manner required by law, the corporation is duly formed, and it has the powers which are given by the statute. They are set forth in the 45th, 46th, 47th, 48th, 49th and 50th sections of Article 40 Revised Code. Among other powers, the 48th section enables it " generally to do every other act or thing, not inconsistent with law, which may be necessary or proper to promote the objects, designs and purposes for which said corporation was formed." We thus see that the powers of a corporation formed under the general law are conferred entirely by the statute. They are not required to be stated in the certificate; and whether stated or not, they are neither more nor less than those mentioned in the sections to which we have just referred. The question is, simply, whether the power of increasing the membership is a necessary or proper method of promoting the objects of this corporation. Its ability to accomplish the objects set forth in the certificate would certainly be very much increased by admitting new members. It would be practically impossible for the five persons named in the certificate, without the aid of others, to do what they profess in the fourth article to be their purpose; and it can hardly be supposed that they had any intention of attempting it without such aid. It is difficult to see how any mode of attaining these objects could be devised, which would be more convenient and expedient than an increase of the membership. Corporations are not restricted by the statute to the use of means which are indispensably necessary to promote the objects for which

they were formed; if there should be many different modes of attaining the same object, neither one could be said to be indispensably necessary; because the object might be accomplished by some of the others. And yet it would be impossible to reach it without using some one of these modes. They must have a choice of such reasonable lawful means as would conduce to effect the purposes of their existence. It is stated by text-writers that the power to admit new members is incident to every corporation aggregate, and need not be expressly conferred. *Angell and Ames on Corporations, section* 114; *Boone on Corporations, section* 28. And the same point was adjudged after solemn argument in *Minnesota vs. Sibley,* 25 *Minnesota,* 387. With respect to all the exceptions except the first and second, it is sufficient to say in general terms that the appellant had a right to prove, if it could, that the club-rooms were kept exclusively for the use of the members of the club, including those who were admitted after the incorporation, as well as those named in the certificate, and that no one but such members were allowed to obtain liquor, refreshments, and other materials from the club; that the materials used by the club were purchased in the name of the club, and paid for with its own money, and were held in common by the members; that no profit was made by the club, or any of its members, or was intended to be made, and that the whole income derived from the different sources of revenue was used solely to replace the materials consumed, and to defray the expenses of the club; and that the prices paid for the refreshments by the members were fixed without an intent to make a profit directly or indirectly, but merely for the purpose of covering the outlay in the purchase of them by the club, and the expense of keeping and serving them at the club-rooms. We understand that this is the substance of the various offers of proof made at the trial, and overruled by the Court on the ground that persons

not named in the certificate of incorporation could not lawfully be admitted into the membership of the club. In this ruling we think that the learned Court erred.

A demurrer was filed to the indictment. Although the question is not properly before us, it was argued by the learned counsel, and we were requested to give our opinion upon it. The fourth and fifth sections of the statute in perfectly distinct terms include a corporation among the delinquents to be punished for a violation of their provisions. The demurrer was properly overruled.