# CIRCUIT COURT OF BALTIMORE CITY.

Filed July 31, 1926.

HARRY W. FANNING
VS.
GERTRUDE FANNING.

*William Purnell Hall*, solicitor for plaintiff.

*David Ash*, solicitor for respondent.

O'DUNNE, J.—

The constitutional question here presented arises in a divorce case, in the taking of testimony before the Examiner, George Arnold Frick, Esq., who certifies to the Court that the witness, Wm. J. Clapp, on being asked certain questions by solicitor for complainant, Wm. Purnell Hall, refuses to answer said questions on the ground that they may tend to incriminate him, and through the examination is advised by his counsel, Mr. Geo. E. Kieffner, not to answer said questions, but to claim his constitutional immunity against self incrimination.

Notwithstanding statements in many of the text writers on Evidence to the contrary, our Court of Appeals has decided that the privilege where it exists, "is the personal privilege of the witness, and must be claimed by him under oath, and that neither the party to the cause nor the counsel engaged in the case will be permitted to make the objection." Chesapeake Club vs. State, 63 Md. 456-7.

The witness Clapp is not a party to the cause, nor is he named in the bill as co-respondent, and therefore as such is probably not entitled to be represented on the record by counsel. Irrespective therefore of whether counsel is legally entitled to advise him of his rights while on the witness stand, he has been so advised, and he does claim the privilege, on the following questions:

Q. No. 10. After you left the hospital did you meet Mrs. Fanning on any other occasion? (Advised by Mr. Kieffner not to answer, he claims his privilege.)

Q. No. 11. In the last nine or ten months have you been registered at the Southern Hotel?

Q. No. 13. In your correspondence, in writing personal letters, do you use an initial instead of signing your full name?

Q. No. 16. I am asking you to take the pen and paper again, and write Mrs. Gertrude Fanning, 1800 E. 31st St., Baltimore Md.?

Q. No. 17. Has Mrs. Fanning ever visited you at any place outside of the City of Baltimore?

Q. No. 18. Isn't it a fact, Mr. Clapp, that you have entertained Mrs. Fanning in your bedroom at the Southern Hotel for lunch or dinner?

Q. No. 20. During the nine or ten months that you have known Mrs. Fan-

ning, how often have you had her out on automobile rides?

Q. No. 21. During the nine or ten months you have known Mrs. Fanning, how often have you visited her at her home?

Q. No. 22. How often in the last nine or ten months have you telephoned from Hagerstown to Mrs. Fanning at her home, 1800 E. 31st St., or at hospital in the City of Baltimore?

Q. No. 23. How often has she telephoned you from Baltimore to Hagerstown?

Q. No. 24. Mr. Clapp, I am handing you an envelope addressed to Mrs. Gertrude Fanning, 1800 E. 31st St., Baltimore, Md., and ask you if that is in your handwriting?

Q. No. 25. Are you a member of the Conococheague Club of Hagerstown, Md.?

Q. No. 26. I am asking you to look at the letter itself contained in the envelope and state whether or not that is your handwriting?

Q. No. 27. How many letters in the last eight or nine months, Mr. Clapp, have you written to Mrs. Fanning?

Q. No. 28. How many letters in the last nine or ten months has Mrs. Fanning written you?

Each of these questions the witness refuses to answer on the ground that the answer might intend to incriminate him.

The Maryland Bill of Rights, Art. 22, gives him that right, if the answer would have that effect.

While a witness can not claim a fanciful right, or make his claim an excuse for refusing to answer legitimate questions, at the same time, he knows better than the Court the extent of his criminality, and because a Court can not determine exactly what crime it might have a tendency to convict him of, that is no reason for the Court to compel him to answer questions until the particular crime is indicated by the answer, and possibly sufficient information forced from him on which to collect the additional information necessary for his prosecution and conviction.

Illustrated by No. 10. Suppose if compelled to answer where he met her after leaving the hospital his answer was "In my room at the Southern Hotel." That might be sufficient to prove adultery. Adultery is a crime under the Maryland law. Or, suppose the answer if compelled was, "We rode in a machine together and took a room in Washington hotel." That would be forcing an admission of the violation of the Mann Act. I do not mean to intimate that these would be his answers. They might be. When he scents the danger of criminal conviction and that danger looks probable, he has the constitutional right to be protected from self incrimination.

He will not therefore be required to answer No. 10.

Nor No. 11 for the following reason. This calls for admission of his registration at Southern Hotel. This would indicate his room and possibly establish his adultery, or it would establish his handwriting, the subject of Q. No. 13.

Q. Nos. 13 to 16 are for the purpose of establishing the authorship of a certain letter, produced by counsel for complainant, but not filed. I have not the information of its contents. It may be the admission of crime. It may be a blackmailing letter. It may be an obscene letter sent through the mail in violation of Federal Statutes. It may indicate a conspiracy, criminal at common law. For any and all of which reasons he is within his rights in claiming protection against self incrimination.

No. 17 he shall not be required to answer. It may prove his guilt under the Mann Act.

He is excused from answering No. 18 the answer to which might convict him of adultery.

No. 20 he is required to answer as a mere statement of how many times in ten months he has been automobile riding with her could not indicate crime, but if followed up by where they went and where they stayed, might easily indicate criminal acts which he would be privileged not to answer.

No. 21 he is required to answer, with the limitations indicated in the next preceding paragraph.

No. 22 he is required to answer, subject to his constitutional protection as to further details as to the nature of the messages, which might indicate violations of the Mann Act or other crimes.

No. 23 he is required to answer.

No. 24 he is not required to answer, for reasons given.

No. 25 he is required to answer, unless membership in said club would implicate him in crime.

Nos. 26 and 27 he is not required to answer, for reasons already stated.

No. 28 he is required to answer as to the number of letters she has written him. This ruling does not go beyond answering that question, and does not require him over objection to identify those letters which may contain proof of his guilt, either of conspiracy, Mann Act, adultery or other crime. But I can not see how the mere enumeration of the number of the letters she has written him could incriminate him, if not pressed further than the question itself indicates.

These questions being certified by the examiner to the Court, the ruling of the Court is as above indicated, as to the questions he shall answer and those he shall be excused from answering.

Subject also to the right of the witness to further indicate his objection to answering any of the questions which he has declined to answer for the reason that we are dealing with a very delicate question on which the witness is in a much better position than the Court to know the nature and extent of his criminality and to appreciate his danger not fully apprehended by the Court.

Done this 30th day of July, 1926.