## BUTZ *v.* STATE

[No. 31, September Term, 1959.]

70

*Decided December 10, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Leonard J. Kerpelman* for the appellant.

*Shirley Brannock Jones, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *Norman Hochberg, Assistant State's Attorney,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

John R. Butz was found guilty in the Criminal Court of Baltimore of common-law burglary in two cases. The cases were tried together by the court, sitting without a jury, and Butz received a sentence of seven years' confinement in the Penitentiary in one case and eighteen months' in the other, the latter sentence to run concurrently with the former.

In the first case, Virginia Campion, 100 Jeffrey Street, Brooklyn, Maryland, testified that on December 2, 1958, some time after 11:00 o'clock at night, her apartment was broken into and sundry articles of personal property stolen therefrom. These articles consisted of a jewel box containing numerous items of jewelry valued in excess of $100.00; a black tweed coat valued at $75.00; a red topper or half-length coat; an electric iron; a purse containing $110.00; a lady's watch which had been in the jewel box; and a gold ring.

Gloria Konski, 3442 Second Street, Brooklyn, Maryland, testified that on December 7, 1958, between 11:10 o'clock P. M. and 1:10 A. M. the following morning her home was broken into, entrance having been gained through a side window of the house, which was jimmied and the glass broken. Taken from her home in the burglary were a 17 inch table model Crosley television set for which she had paid $185.00, a pocket-book, a toaster, a quilt which she was in the process of making, some clothes which were on the kitchen table, a record player, two Bibles and a coat. Additional facts will be added as the questions to be decided progress.

## I

The appellant first contends that the trial court erred in permitting the witness Curry to testify, over the objection of the *defendant,* to certain matters that the defendant claimed tended to criminate the witness.

Anna Mae Curry lived with Butz, to whom she was not married, at 41 S. Fulton Avenue. When the State began interrogating this witness, appellant's counsel raised the question that her testimony might be self-incriminating and she was advised by the court that she had the right to refuse to answer any questions which she thought would tend to criminate her. She was further advised by the court that during the luncheon recess she could consult an attorney concerning her rights. Upon the resumption of the trial, the Assistant State's Attorney advised that the State was granting immunity to this witness, and the court concurred in the granting of the immunity and ruled, without objection from the *witness,* that she must testify as immunity had been granted. Anna Curry said that she had seen the jewel box which was offered in evidence and its contents in her apartment at 41 S. Fulton Avenue while she was living there with Butz. She could not recall the exact date, but it was in December and possibly around Christmas time (she later testified she had one of the rings pawned about December 16), Butz gave her the jewel box and told her not to say anything about it, and she left it on the dresser until she was told by him that it had been stolen. He told her this when the police came to the apartment of one Fleenor, who lived on the floor beneath the apartment occupied by her and Butz. She thereafter took the jewel box to a "woman's house" and then to another woman's residence; she "hocked" the lady's wrist watch, which had been in the jewel box, for $7.00 and the ring for $2.00. The coat taken in the Konski burglary was in her closet until she discovered that it had been stolen, and she then took it, together with the jewel box, to the "woman's house." Following her direct testimony, the witness was questioned by the appellant's counsel as to her desire to testify, and with "yes" and "no" answers to counsel's leading

questions she indicated that she would not have testified had she not been told by the judge to do so.

The appellant argues (a) that neither the court nor the prosecutor, without conferral of power by statute, can grant immunity to a witness, not an accomplice of the defendant, claiming the privilege against self-incrimination; and (b) that in Maryland, contrary to the great weight of authority elsewhere, the rule is that a defendant in a criminal case may, on appeal, take advantage of an erroneous ruling of the trial court in compelling a witness, who has claimed the privilege against self-incrimination, to testify.

The privilege against self-incrimination is a personal one and must be asserted by the witness, and, although it is by no means certain that Mrs. Curry properly claimed the privilege, for the purposes of this case we shall assume that neither the court nor the prosecutor, without conferral of power by statute, could grant her immunity and that she properly claimed the privilege. With both of these assumptions in favor of the appellant, it avails him nothing. The privilege belonged to the witness, not to the defendant. *Roddy v. Finnegan,* 43 Md. 490, 502; *Raymond v. State,* 195 Md. 126, 130, 72 A. 2d 711. Cf. *Richardson v. State,* 103 Md. 112, 117, 63 A. 317. It is intended for the protection of the witness only and does not involve any right of the parties to litigation (unless, of course, the witness is also the party). 8 Wigmore, *Evidence* (3rd Ed.), Secs. 2196, 2270. The testimony given by a witness, who has a proper claim of privilege, is not subject to objection on the ground of privilege at the instance of the defendant, but is competent evidence and admissible against him, if material. *Chesapeake Club v. State,* 63 Md. 446, 455, 458. And if a witness makes a claim of privilege and it is improperly disallowed by the court, it is not reversible error on behalf of a party to the action. *Wigmore, ibid.,* and other authorities named below.

In making the above ruling, we realize that it is not in conformity with one phase of the *Chesapeake Club* case, just referred to, and, insofar as that case is to be construed as a general holding to the effect that a defendant in a criminal case is entitled to a new trial because privileged, though ma-

terial, testimony of a witness, who is not a party, has been admitted in evidence, we decline to follow the same. That case involved a prosecution under the local option laws of Anne Arundel County. A rather unusual statute provided that no corporation should sell or give away any liquors within the county without being subject to penalty, and, in case of any violation of the provisions of the statute by a corporation, "each or any member of such * * * corporation * * * shall be liable" and suffer imprisonment. The Chesapeake Club, a corporation, was indicted alone under the statute and a witness, who was a member of the club, was compelled to testify after *personally* claiming that his testimony would tend to criminate him. The court held that this was error and, without stating any other or specific reasons for granting the club a new trial, reversed and remanded the case for a new trial.

The ruling that we are now making is the one adopted by the English Courts, *R. v. Kinglake,* 11 Cox Cr. 499, and is in accord with the overwhelming weight of authority in this country. *Morgan v. Halberstadt,* 60 Fed. 592, 596 (C.A., 9th); *Beauvoir Club v. State,* 42 So. 1040 (Ala.); *State v. Cassady,* 190 P. 2d 501, (Ariz., 1948); *State v. Davis,* 23 So. 2d 801, 811, (La., 1945); *Parker v. Board of Dental Examiners,* 14 P. 2d 67 (Cal., 1932); *Samuel v. People,* 45 N. E. 728 (Ill.); *State v. Cobley,* 103 N. W. 99 (Iowa); *Cloyes v. Thayer,* 3 Hill 564, 566; *State v. Morgan,* 45 S. E. 1033 (N. C.); *Phelin v. Kenderdine,* 20 Pa. 354, 363; *State v. Butler,* 24 S. E. 991; 3 Wharton, *Criminal Evidence* (12th Ed.), Sec. 729. Cf. 2 Underhill, *Criminal Evidence* (5th Ed.), Sec. 357; *Adams v. State,* 200 Md. 133, 143, 144, 88 A. 2d 556.

In the *Cassady* case, *supra,* the Supreme Court of Arizona stated (190 P. 2d 509): "There is no merit to this assignment [witness compelled to give testimony after claiming privilege] for the reason that the privilege against incrimination is personal to the witness, and the accused is not entitled to have such evidence excluded which is claimed to have incriminated the witness." Blackburn, J., in the *Kinglake* case tersely said, "Granting that a wrong was done to the witness, it is

a ground of complaint for him and no one else." The New York court in *Cloyes v. Thayer, supra,* stated the principle thus: "The privilege belongs exclusively to the witness, who may take advantage of it or not at his pleasure. * * *. If ordered to testify in a case where he is privileged, it is a matter exclusively between the Court and the witness. The latter may stand out and be committed for contempt, or he may submit; but the party has no right to interfere or complain of the error." The other cases and text-writers cited above affirm the doctrine in similar language.

Insofar as we have been able to discover, Massachusetts is the only state that holds otherwise. In the early case of *Comm. v. Kimball,* 24 Pick. 366, 368 (1837), it was held that if the evidence were incompetent by reason of seasonable objection by the party the verdict was not supported by legal evidence. This case was followed by another early case in Wisconsin, *State v. Olin,* 23 Wisc. 309, 318; but, thereafter, the Supreme Court of Wisconsin has made two rulings in accordance with the majority rule. *Ingalls v. State,* 4 N. W. 785, 791 (Wisc.); *State v. Hanley,* 24 N. W. 2d 683, 684 (Wisc., 1946).

## II

The appellant, next, attacks the sufficiency of the evidence. His argument on this score is that the testimony boils down to that of a convicted thief (Sirbaugh, to be mentioned shortly), whose testimony should be entitled to little weight, the testimony of the witness Curry, which he claims was given after the claim of privilege and, therefore, should have been excluded, and such inferences as may be properly drawn from a "not-very-recent and not-very-exclusive" possession of property taken by someone in two burglaries; and that this evidence, considered collectively is insufficient to support the convictions of burglary.

In reviewing the sufficiency of the evidence, after a conviction below, it is not our function to determine whether or not we think the evidence established that the defendant was guilty of the offense charged beyond a reasonable doubt. Our duty is merely to decide whether there was evidence, or proper

inferences therefrom, upon which the trial court could find the accused guilty, and if the record shows such evidence, or proper inferences therefrom, we cannot find that the trial court was clearly erroneous. Maryland Rule 741 c; *Clay v. State*, 211 Md. 577, 580, 128 A. 2d 634; *Basoff v. State*, 208 Md. 643, 119 A. 2d 917.

There was direct and specific testimony that two burglaries had been committed in the Brooklyn section of Baltimore City, one at the Campion home on December 2, and the other at the Konski home on December 7. The witness Curry's testimony was as we have related it above.

Calvin Sirbaugh, a witness called by the State, had known Butz for some time. He went to the defendant's apartment about two weeks before Christmas. Butz took him to Fleenor's apartment on the lower floor. In Fleenor's apartment was a television set similar to the one taken from the Konski home. The next morning, the witness, Butz and two other persons took the television in an automobile, with Butz driving, and made several attempts to "hock" the same, but, being unable to do so, they brought it back to Fleenor's. The witness and Fleenor, thereafter, took the television set to the witness' mother-in-law and sold it for $10.00. Butz did not receive any of the $10.00 as far as the witness knew. The television set was later recovered by the police and identified by Mrs. Konski.

When Sirbaugh was in Butz's apartment about two weeks before Christmas, he asked Butz "how did he get all these clothes and stuff in here," to which Butz replied that he and someone else had "knocked off" a place in Brooklyn. Included among the "stuff" was a toaster sitting on a stove and Butz told him that had come "with the rest of the stuff" and "it [was] hot too."

The police then related how and where they had recovered some of the articles stolen: two Bibles taken from the Konski home were located in Fleenor's apartment; Mrs. Konski's black coat and Mrs. Campion's jewelry box from the "woman's house"; and several of Mrs. Campion's articles from the pawnbrokers, where they had been "hocked" by Mrs. Curry or at her request.

There was no explanation given by Butz, nor anyone on his behalf, as to how he came into possession of the articles stolen from the two homes. It will be noted that the testimony disclosed that he was in possession of them approximately fourteen days after the first burglary and about nine days after the second. The appellant claims this possession is too remote from the dates of the burglaries to constitute "recent" possession, and, as Mrs. Curry occupied the same apartment as the accused, his possession of the articles was not "exclusive," so that no inference of his guilt was permissible from his possession of the stolen articles. We cannot agree. We stated in *Felkner v. State*, 218 Md. 300, 305, 146 A. 2d 424 [statutory burglary], that the possessor of stolen goods soon after the theft must give a reasonable explanation of how he came into possession or face the inference that he is the thief; and in *Jordan v. State*, 219 Md. 36, 46, 148 A. 2d 292, [receiving stolen goods], we pointed out that the inference to be drawn from possession alone is never one of law, but of fact. The term "recent," when used in connection with recently stolen goods, is a relative term, and its meaning as applied to a given case will vary with the circumstances of the case. 1 Wharton, *Criminal Evidence* (12th Ed.), Sec. 135. Cf. Underhill's *op. cit.*, Sec. 723; 32 Am. Jur., *Larceny*, Sec. 142. This Court stated in *Debinski v. State*, 194 Md. 355, 359, 71 A. 2d 460, [statutory burglary], that it declined to "set up a period of limitation to determine whether or not possession of stolen goods is or is not recent, but we do say that * * * possession nine days after it was stolen is a recent possession." In the instant case, we again decline to set up a "period of limitation" as stated in *Debinski, supra,* but have no hesitation in holding that the defendant's possession, on or about December 16, of the articles taken from the Campion and Konski residences was "recent" for the purposes of the rule being considered.

We shall not labor the appellant's claim that his possession was not "exclusive." It assumes that the only testimony in that regard was that the articles were seen in an apartment occupied by him and Mrs. Curry; but this disregards entirely the testimony of Mrs. Curry, which the trial court was at

liberty to believe, to the effect that Butz *gave* certain of the articles to her. There can be no doubt that where it is shown that the possession was personal and involved a distinct and conscious assertion of possession by the exercise of complete dominion and right of disposal by the defendant, it is "exclusive" within the rule. 32 Am. Jur., *Larceny*, Sec. 141.

Having determined that the defendant's possession of the articles was recent and exclusive so as to create an inference of his guilt, in the absence of a reasonable explanation (in this case no explanation) showing that his possession was otherwise acquired than by the particular burglaries, the weight to be given the inference should be decided. The strength of such an inference is determined by several factors, included among which are the character of the property, whether it is saleable or whether it is cumbersome or easily portable, the nature of the possession, its closeness to the time of the commission of the crime, the place of the possession and its secrecy and exclusiveness. 9 Am. Jur., *Burglary*, Sec. 74. Under the circumstances shown to exist in the present case, the trial court was justified in drawing a strong inference of the guilt of the defendant from his possession of the goods, in the absence of any explanation thereof. Moreover, in the case at bar the inference of guilt is strongly supported by the admissions of the defendant to Sirbaugh when he stated that he and someone else had "knocked off" a place in Brooklyn, and that the toaster had come with the rest of the "stuff" and it was "hot" too. The evidence offered by the State and the inferences properly drawn therefrom amply supported the verdicts rendered by the trial court.

### III

The appellant continues by claiming he was denied due process of law in the conduct of his trial. This contention is based upon the following facts. At the conclusion of the taking of testimony and before argument of counsel, the trial judge took the cases *sub curia* in order to give counsel the opportunity to file memoranda concerning the admissibility of the evidence of Anna Curry. The court received and considered the memorandum submitted by Butz's attorney. A

few days thereafter the cases were in for disposition. Butz was, of course, present and Butz's counsel was in Court, although he had not been notified that they would be disposed of at that time. He immediately approached the trial judge, who after certain colloquy with the attorney, ruled that Anna Curry's testimony was admissible, found the defendant guilty in both cases, and pronounced sentences of seven years' confinement in each case, to run concurrently. The defendant's counsel did not at any time request a postponement of the disposition of the cases, nor, up to this point, did he state that he desired to argue the cases. At this point, he informed the court that he desired to argue the Konski case. The court immediately granted the request stating, "I do not want to foreclose any opportunity to you or to the defendant." After the argument, the court again announced that he found the defendant guilty in both cases and imposed a sentence of seven years' confinement in one case and eighteen months' in the other, to run concurrently. In the above, we do not discern any such departure from the established and ordinary rules of practice, or that any ingredient of unfairness to the defendant entered the trial, so as to amount to a denial of due process of law. *Mazer v. State,* 212 Md. 60, 67, 127 A. 2d 630; *State, ex rel. Beard v. Warden,* 193 Md. 715, 67 A. 2d 236. Cf. *Coates v. State,* 180 Md. 502, 511, 25 A. 2d 676; *Betts v. Brady,* 316 U. S. 455, 462; *Gall v. Brady,* 39 F. Supp. 504, 513, affirmed 125 F. 2d 253; *Madison v. State,* 205 Md. 425, 435, 109 A. 2d 96; *Wolfe v. State,* 218 Md. 449, 455, 146 A. 2d 856.

IV

This leaves for disposal two rulings of the trial court upon the admissibility of evidence. When the witness Sirbaugh was testifying concerning the attempt to dispose of the television set, he stated that Butz saw a man on a street corner and "hollered over to talk to him; *knew him from Jessups* (a penal institution)." (Emphasis supplied.) Counsel moved to strike this testimony and assigns as error the court's overruling of the motion. This assignment of error is completely without merit for, at least, two reasons. In making the motion to strike, defendant's counsel objected to the evidence

as "tending to prove my man has a criminal record." The judge in overruling the motion stated, "I am ignoring the criminal record, if it means a criminal record * * * he may have been a visitor there." Moreover, the witness who was testifying had previously stated, without objection, that he, the witness, had known Butz for thirteen months in the same penal institution.

The other claim of error in regard to the admissibility of evidence is equally without merit. The accused's counsel objected to a question propounded to the witness Sirbaugh on the ground that it was leading. The court overruled the objection, but the question was never answered; hence there was no prejudice to the defendant, even if we assume the question were leading.

*Judgments affirmed.*