[Crim. No. 8572.   Second Dist., Div. One.   July 8, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN GERALD GIFFIS, Defendant and Appellant.

54

Harold J. Ackerman for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment wherein appellant was found guilty of burglary and grand theft.

In an information filed in Los Angeles County on April 9, 1962, defendant was charged in Count 1 with burglarizing a building or store of David Goldin on or about September 2, 1961; in Count 3 he was charged with taking on or about September 2, 1961, certain restaurant equipment of David Goldin of a value in excess of $200. Count 2 charged the receipt of stolen property of which defendant was acquitted.

Two prior felony convictions also were charged, the first for receiving stolen property and the second for the unauthorized taking of an automobile (in the latter case defendant was charged with "three prior convictions"). Trial before a jury was had and defendant was found guilty of the burglary and grand theft charges. Probation was denied and he was sentenced to the state prison. Defendant now appeals "from the Judgment and Sentence."

A résumé of some of the facts as recited in the reporter's transcript is as follows:

Goldin formerly operated a restaurant fixture supply company and was at or about a time just previous to the episodes in question a sales representative for an oven company. In October of 1960 Goldin was introduced to Giffis who was operating a restaurant fixture supply business known as the ABC Fixture Company in El Monte, California. In November of 1960 Giffis and Goldin formed a company (in which each owned an equal share) to sell restaurant equipment. In January 1961 they dissolved their company and Goldin bought out Giffis' interest and continued to operate the business alone. Giffis retained some of the used equipment from the business, which used equipment remained in the yard at the rear of the building where the business was operated by Goldin. Giffis was to have removed the same within a specified time and further he was to pay a rental for a storage area in the back part of the building. That arrangement ended by June of 1961. Goldin changed the locks on the building and on occasion when Giffis wanted in the building he would secure access by request from Goldin. In June 1961 there was a court action between defendant and Goldin with reference to their disputes about their rental agreement. Later Giffis opened a business of the same character across the street.

On the Friday before Labor Day in September 1961 Goldin, before leaving his business place, secured the premises and they seemed at that time to be in good order. Bruce Johnson who was employed by Goldin knew that the business was not

to be opened on the Saturday before Labor Day. On the morning of Labor Day, Johnson was walking by Goldin's place of business and observed that the front door was open, he went inside and saw that a window was broken (glass from which was mostly on the inside of the building) and that the back door near the loading dock was open and a major part of the equipment was missing. No one was around the premises at that time. Johnson had been around the place of business on Saturday or Sunday and had seen no one there at that time. Johnson called the sheriff's office and a list of some of the missing items was made. Another witness described the premises as of about that time as appearing as if "a cyclone had hit the place."

Goldin returned to his business place on Tuesday, September 5, 1961, and observed the condition. Most of the equipment which had been there on Friday when he had left the business was gone. A filing cabinet which contained records of the business also was missing. Some of the equipment was quite heavy and some of it was new and some used. No permission had been given for anyone to enter the place of business and take anything. An inventory was made and a list of missing items was given to the police. Further a list of missing items was sent to various restaurant equipment dealers in the area on or about September 7, 1961. Goldin made an effort to and did secure some serial numbers from the manufacturers of the items in question. The list of missing equipment was not complete but it did include some of the major items and it was estimated that the fair market value of such was over $5,000. One of the articles listed was a doughnut kettle which was defective in that a leg on the right hand side thereof had been broken off and prior to the theft was on the floor under the kettle. The retail price of this kettle alone was $250. The missing leg of the kettle was left on the floor at the time of the removal of the kettle. Goldin found the leg of the kettle and showed it to some of his employees. The top portion thereof was rough and jagged as though a weld had been broken.

Lyman Baker, a manufacturers' representative of a company which manufactured one of the missing items, later told Goldin that the missing equipment was in Phoenix, Arizona.

On Monday, March 19, 1962, Goldin went to a place of business known as West Sales in Phoenix, Arizona, and there saw much of the equipment he had been looking for. He checked serial numbers in some instances and they matched

the equipment in Phoenix. At a later date Goldin brought with him the doughnut kettle leg which had been left upon the floor of his place of business and found that it fitted exactly the doughnut kettle found in Phoenix. A filing cabinet similar to the one Goldin had had also was found in the store at Phoenix. During the week before the burglary and on Friday, September 1, 1961, Goldin had seen defendant around his place of business. Defendant with some men and a truck were removing at the request of Goldin defendant's equipment from the yard.

Frank Quattrochi talked with Goldin some four months before the burglary about the sale of his business. Quattrochi indicated that he was to be the purchaser in his own behalf. However, apparently in fact he was the agent for a Mrs. Hunt in the proposed purchase. She in turn had in mind the buying of the business and then the hiring of appellant who was her friend to manage it for her. As of October 8 or 9 an inventory of the stock of equipment was taken. The business was then sold to Mrs. Etta Hunt who first came to light as the real purchaser through a deposit slip given to Goldin by Quattrochi on September 27. The sale was to exclude the property stolen on or about September 2, 1961. Mrs. Hunt took possession of the business on or about October 9, 1961.

William Lovett who had been in the restaurant equipment supply business for 35 years went in December of 1961 to the place of business and there talked with appellant who represented to Lovett that he owned the business and appellant asked Lovett to locate a place for him to start a business in Phoenix, Arizona. Lovett later located a place in Phoenix and when appellant looked at it, Lovett and appellant agreed to enter into a business relationship. Lovett was to put up the operating capital to start the business and appellant was to furnish the equipment stock. Appellant told Lovett that he owned the store and the equipment therein. On or about March 1, 1962, the possession of the building in Phoenix was secured and about $300 worth of equipment was supplied by appellant. Lovett previously had put up approximately $2,-000 for appellant. During the first part of March 1962 there was a further shipment from appellant's store via Thunderbird Freight Lines. Lovett identified the doughnut kettle as one of the items in the shipment of equipment by appellant to him. He also identified many of the other items. Lovett,

interestingly enough, never got back his $2,000 advanced to appellant.

Appellant told police after his arrest on March 19, 1962, that he owned the ABC Restaurant Fixture Company, that a friend, Mrs. Hunt, had put him in business and further that he was in business in Phoenix, Arizona, with Lovett. When he was told that the items which had been stolen from Goldin's store had been located in Phoenix and that "it comes right back to you" he said, "I sent all those items." He further stated that he had purchased the items elsewhere, that they had been purchased from Goldin by Mrs. Hunt, that Goldin had sold him the doughnut kettle with the missing leg and he made other contradictory statements. He admitted shipping the items to Phoenix. He made a showing further that he was in bad health because of certain physical ailments. Further he stated he was at Goldin's premises on Labor Day to see how his (appellant's) workmen were getting along with taking the items out of the rear yard of Goldin's place of business. Appellant further said that he did not authorize or instruct the men who were working for him to enter the premises of Goldin. He contradicted some of the testimony of Lovett and some of the testimony of the police.

Appellant now asserts in effect that the evidence is insufficient as a matter of law to sustain the judgment, that the court erred in instructing the jury upon the principles of aiding and abetting and that the judgment is contrary to section 654 of the Penal Code.

It is claimed that the identification of the property found in Phoenix was ineffective and insufficient to establish that it was the stolen property. Our Supreme Court in *People* v. *McFarland,* 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449], stated the rule as follows:

"Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt. (E.g., *People* v. *Citrino,* 46 Cal.2d 284, 288-289 [294 P.2d 32]; *People* v. *Thompson,* 120 Cal.App.2d 359 [260 P.2d 1019]; *People* v. *Morris,* 124 Cal.App. 402, 404 [12 P.2d 679].) This court stated in *People* v. *Lyons,* 50 Cal.2d 245, 258 [324 P.2d 556], '[P]ossession of stolen property, accompanied by no explanation, or an unsatisfactory explanation of the possession, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had

been stolen. The rule is generally applied where the accused is found in possession of the articles soon after they were stolen.' (See also *People* v. *Reynolds*, 149 Cal.App.2d 290, 294 [308 P.2d 48]; *People* v. *Lopez*, 126 Cal.App.2d 274, 278 [271 P.2d 874].) ▆ [2] In *People* v. *Citrino, supra*, 46 Cal. 2d 284, 288-289, after pointing out that corroboration need only be slight and may be furnished by conduct of the defendant tending to show his guilt, we said, '. . . and the failure to show that possession was honestly obtained is itself a strong circumstance tending to show the possessor's guilt of the burglary.' Substantially the same statement is made in a number of other cases, including *People* v. *Russell*, 34 Cal.App. 2d 665, 669 [94 P.2d 400] [burglary], *People* v. *Golembiewski*, 25 Cal.App.2d 115, 117 [76 P.2d 717] [burglary], *People* v. *Taylor*, 4 Cal.App.2d 214, 217 [40 P.2d 870] [burglary], and *People* v. *Morris*, 124 Cal.App. 402, 404 [12 P.2d 679] [burglary].

▆ "[3] It has frequently been held that possession of recently stolen property together with a *false explanation* will support a conviction. (E.g., *People* v. *Ransome*, 180 Cal.App.2d 140, 146-148 [4 Cal.Rptr. 347] [theft]; *People* v. *Russell*, 120 Cal.App. 622, 625-626 [8 P.2d 209] [burglary]; *People* v. *Scott*, 66 Cal.App. 200, 203 [225 P. 767] [theft].) A defendant's silence upon arrest was relied on as corroborative evidence in *People* v. *Wells*, 187 Cal.App.2d 324, 331-332 [9 Cal.Rptr. 384] [burglary], where it was said: 'The jurors would naturally and reasonably conclude that if he [the defendant] had purchased the property or acquired possession of it honestly he would be swift to declare and explain the circumstances that vindicated his conduct . . . His silence, when it would have been so easy for him to speak if innocent, is quite persuasive and convincing.' (See also *People* v. *Miller*, 45 Cal.App. 494, 496 [188 P. 52] [theft].)

"The great weight of authority in other jurisdictions recognizes that an inference of guilt is permissible where recently stolen property is found in the conscious possession of a defendant and the possession is not explained. (See 101 Am. St. Rep. 481-524; Wigmore on Evidence (3d ed. 1940) vol. 1, §§ 152, 153, pp. 598-600; *id.*, vol. 6, § 1781, pp. 226, 228; *id.*, vol. 9, § 2513, pp. 417-423; 3 Underhill's Criminal Evidence (5th ed. 1957) §§ 600, 601, 602, pp. 1460-1471; *id.*, § 723, pp. 1683-1687; 56 A.L.R.2d 1360-1365; 12 C.J.S. 717, 736-737; 52 C.J.S. 924 et seq.)

"[4a] The rule may be stated as follows: Where recently stolen property is found in the conscious possession of a defendant who, upon being questioned by the police, gives a false explanation regarding his possession or remains silent under circumstances indicating a consciousness of guilt, an inference of guilt is permissible and it is for the jury to determine whether or not the inference should be drawn in the light of all the evidence. As shown by the California cases cited above, this rule is applicable whether the crime charged is theft, burglary, or knowingly receiving stolen property. (See also 9 Wigmore on Evidence (3d ed. 1940) § 2513, pp. 422-423.)"

In the case at bar the property in question was stolen on or about September 2, 1961, from Goldin's store in El Monte, California. Approximately six months later the property was located in a store in Phoenix, Arizona, in which appellant had an interest. It is clear that appellant had possession of the property for many months before it was discovered in Phoenix, Arizona.

In his brief appellant admits to the possession of the property from about October 13, 1961, which date is about six weeks following the date of the theft. He made different explanations at different times to different people as to how such property came into his possession.

· The time interval (that is the time between the theft of the property and the time it can be established that the property was in the possession of the defendant) varies in each case. There is no set rule as to what constitutes recent possession, that is, there is no given number of minutes, days or weeks when a court will say that the mere possession of the stolen property with other corroborative evidence is sufficient to convict a person of burglary. (See *Cone* v. *State*, (Fla.) 69 So.2d 175, 176-177; *State* v. *Oliver*, 355 Mo. 173 [195 S.W. 2d 484, 485]; *People* v. *Pride*, 16 Ill.2d 82 [156 N.E.2d 551, 557]; *Butz* v. *State*, 221 Me. 68 [156 A.2d 423, 428].)

In *People* v. *Lanza*, 186 Cal.App.2d 860, 863-864 [9 Cal. Rptr. 161], this court said:

"Furthermore, the appellant was familiar with the burglarized premises and this is a circumstance which could have been considered by the judge. (*People* v. *Mercer*, 103 Cal. App.2d 782, 790 [230 P.2d 4].)

"Appellant asserts under his second claim that too much time elapsed from the date the items were stolen to the date

they were found in his garage to apply the rule to the effect that possession of stolen property by an accused is some evidence tending to show that the accused was guilty of burglary.

"[3] It was appropriately said in *People* v. *Arbaugh,* 82 Cal.App.2d 971, 987-988 [187 P.2d 866] as follows: '. . . We understand the law to be as stated by the court, that when a burglary has been committed, and the defendant is found in possession of the stolen property, "however soon after the taking," such possession of the stolen property is a circumstance which, when unexplained, and taken in connection with other incriminating evidence in the case, may be considered by the jury in determining the question of the guilt or innocence of a defendant charged with the burglary, and the weight or intrinsic value of such evidence of possession in the light of time elapsing between the burglary and the discovery of possession by the defedant is a question for determination by the jury (*People* v. *Russell,* 34 Cal.App.2d 665, 669 [94 P.2d 400]; *People* v. *Shaw,* 46 Cal.App.2d 768, 771 [117 P.2d 34]; *People* v. *McCann,* 34 Cal.App.2d 376, 377 [93 P.2d 643]; *People* v. *Golembiewski,* 25 Cal.App.2d 115, 117 [76 P.2d 717]). The primary question is whether a defendant was found in possession of the stolen property under circumstances and conditions which justify the triers of fact in concluding that he was the guilty party in the burglary charged against him.' "

The jury in this case upon the evidence could, and apparently did, properly find that under all of the circumstances, including the time factor, defendant was guilty of the burglary charged.

Furthermore it is to be noted that the property here in question was apparently heavy, bulky and large, and such that a person by himself and particularly one in delicate health would be wholly unable to move. The defendant testified as heretofore indicated that he was a sick man and in effect unable to do any real heavy work or labor.

With reference to the identification of the property the evidence was sufficient to establish adequately that the property in Phoenix was the same as that which was stolen. There were serial numbers which checked out as being the same, there was the broken kettle leg, there was an item from which a knob was missing and other peculiarities which were noted. Appellant asserts now that the manufacturers were not called to testify at the trial with reference to the

serial numbers and therefore the evidence with reference thereto was hearsay. It may be so, but there was no objection to the receipt of such evidence at the trial. See *People* v. *Merkouris*, 52 Cal.2d 672, 684 [344 P.2d 1]; *Newman* v. *Los Angeles Transit Lines*, 120 Cal.App.2d 685, 695 [262 P.2d 95]; *Buchanan* v. *Nye*, 128 Cal.App.2d 582, 586-587 [275 P.2d 767].

With reference to the instruction of the court to the jury on the matter of principals of aiding and abetting[1] appellant asserts that there was no evidence in the case to warrant any such instruction.

The instruction is proper where more than one person takes part in the commission of an offense. (*People* v. *Richardson*, 74 Cal.App.2d 528, 535 [169 P.2d 44]; *People* v. *Best*, 43 Cal.App.2d 100, 103 [110 P.2d 504]; *People* v. *Pianezzi*, 42 Cal.App.2d 270, 280 [108 P.2d 685]; *People* v. *Gregor*, 141 Cal.App.2d 711, 721 [297 P.2d 734].)

Had the court failed to give the instruction the jury might well have believed that before the defendant could be convicted of the charge in question it was necessary that he personally, physically and alone had moved the heavy and bulky equipment out of Goldin's building. Such is not the law. We see no error under the circumstances in the giving of the instruction.

The appellant's third contention is meritorious under the rule laid down in *People* v. *McFarland*, 58 Cal.2d 748, 760 [26 Cal.Rptr. 473, 376 P.2d 449]. It was error to impose sentence for both burglary and grand theft upon appellant with respect to the property in question. The evidence was sufficient to support the conviction on each count. However, appellant cannot be punished for both offenses. Double conviction is not proscribed but double punishment is and the court may provide only for the more serious offense. Here the burglary offense is the one subject to a greater punishment (Pen. Code, § 461).

The judgment is reversed insofar as it imposes a sentence for grand theft. In all other respects the judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

---

[1] "91 (Revised)
"PRINCIPALS—DEFINED
"All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission or, whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof."