**STATE of Maine**

v.

**Richard SAPIEL.**

Supreme Judicial Court of Maine.

Argued Nov. 7, 1980.

Decided July 30, 1981.

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Paine & Lynch, Martha J. Harris (orally), Bangor, for defendant.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN * and CARTER, JJ.

NICHOLS, Justice.

Indicted for theft by unauthorized taking or transfer, 17–A M.R.S.A. § 353 (Supp. 1979),[1] the Defendant, Richard Sapiel, was found guilty by a Penobscot County jury on February 25, 1980. The following day the same jury returned a guilty verdict on an ancillary indictment for habitual theft, 15 M.R.S.A. § 757 (1980).[2]

Appealing from the judgments entered thereon in Superior Court, the Defendant raises five issues, contending: (1) the warrantless search and seizure of the Defendant's automobile was in violation of the Maine and United States Constitutions; (2) the presiding justice abused his discretion in admitting certain photographs at trial; (3) the evidence was not sufficient to warrant application of the "permissible inference" provided by 17–A M.R.S.A. § 361(2) (Supp. 1979); (4) the court's jury instructions were prejudicially misleading; and (5) the use of the same jury for both the trial on the theft offenses and the trial on the ancillary indictment deprived the Defendant of his constitutional right to a fair trial on the habitual theft charge.

We sustain the appeal, finding prejudicial error in the court's jury instructions.

The facts of the case may be readily summarized. On January 29, 1979, Edward P. Wynn, Jr., discovered missing from his

---

\* GLASSMAN, J. sat at argument and participated in the initial conference but died before the opinion was adopted.

1. 17–A M.R.S.A. § 353 states in part here pertinent:

 A person is guilty of theft if he obtains or exercises unauthorized control over the property of another with intent to deprive him thereof.

2. 15 M.R.S.A. § 757 provides in pertinent part:

In all cases where prior conviction for an identical offense or any other offense affects the sentence which the court may impose in a current principal offense, such prior conviction shall not be alleged in the complaint, information or indictment alleging such principal offense, but shall be alleged in a separate complaint, information or indictment, ancillary to the principal offense, upon which the respondent shall not be arraigned until such time as the respondent has been convicted of the principal offense.

automobile a gray tool box with a dent over the latch and several tools inscribed with his name. Two months later, on March 26, 1979, Merlin Campbell discovered missing from the dash of his pickup truck a C. B. radio. The same day David W. Gray discovered missing from his automobile a Hy-Gain antenna, a steering wheel knob, and an emergency light. The next morning Janice Kwiatkowsky discovered that twenty-four 8-track tapes, a tape case, and a tote bag had been removed from her automobile.

During the afternoon of April 2, 1979, while on routine patrol, Officer Donald R. Rhodes of the Old Town Police Department observed the Defendant's automobile backed into the driveway of the Donald Ewer residence on Route 43. Aware of the Defendant's involvement in thefts in the past, Officer Rhodes suspected a possible break into the fairly new house. After observing the residence for a few minutes, he blocked the driveway with his cruiser and proceeded to investigate. Approaching the automobile to see if any household items had been removed from the house, he noticed a C. B. antenna on the vehicle's roof, and looking through its windows saw a C. B. radio and 8-track tape player on the dash, several tools on the floor, and a hammer, dented tool box, tape case with tapes, and tote bag in the back seat. The officer knew that items similar to these had been reported stolen.

The Defendant came to the door of the Ewer residence and told Officer Rhodes that he was babysitting for his sister. Officer Rhodes then left in his police cruiser and drove fifty yards down the road. From there he watched the Defendant run to his vehicle and "hurriedly" do something inside of it for about five minutes.

Detective Patrick Murray arrived on the scene and with Officer Rhodes approached the Defendant's vehicle. The Defendant got out of his automobile, locked its doors, and went inside the house after refusing to talk to Officer Rhodes and Detective Murray. Officer Rhodes again looked through the windows of the automobile and observed that the C. B. radio and the tape

player had been "ripped out from underneath the dash" and placed on the floorboard "underneath the driver's side of the seat."

The Defendant having refused to turn over his keys to his automobile, Detective Murray called the District Attorney's office and received permission to have the vehicle towed to the police station. The locked car was removed to the station where, following the procurement of a search warrant, it was opened and its contents inventoried by Detective Murray. Among the items found were tools inscribed with "E. Wynn" or "Ed Wynn," a Hy-Gain antenna, an emergency light, a C. B. radio, a steering wheel knob, a tote bag containing personal papers of Janice Kwiatkowsky, and a gray tool box. Subsequent to this search, the four victims previously mentioned visited the police station and identified their respective personal property.

On May 7, 1979, the Defendant was indicted by a grand jury on four counts of theft and charged on an ancillary indictment with habitual theft. Following a not guilty plea, the Defendant filed a motion to suppress the evidence seized on grounds that it was obtained illegally without a warrant. This motion was denied at a suppression hearing held on August 8, 1979. At the Defendant's jury trial the seized items were introduced and admitted as evidence.

Following conviction on all four counts of theft, the Defendant pleaded not guilty at his arraignment on an ancillary indictment for habitual theft. Trial on the habitual theft charge was held the next day, and the Defendant was found guilty by the same jury. Evidence presented at this trial established that the Defendant had been convicted twice before of theft on October 13, 1977, and December 6, 1978.

### Search and Seizure of the Defendant's Automobile

■ At the threshold we note that on oral argument the State for the first time questioned the Defendant's standing to have contested the warrantless search and

seizure of his automobile and urges us to address the standing issue on our own motion. The issue, however, was not preserved for appellate review. Standing in this instance is not jurisdictional; it pertains only to the admissibility of evidence. The question of whether the Defendant had standing to challenge the warrantless seizure of his automobile was lost by the State's procedural default. *See State v. Blais*, Me., 416 A.2d 1253, 1256 n.2 (1980).

The Defendant raises three arguments in support of his contention that the warrantless seizure of his automobile infringed upon his state and federal constitutional rights[3] and that the evidence obtained pursuant thereto should have been suppressed. As previously noted, the items found in his automobile were introduced and admitted into evidence at trial.[4]

The Defendant argues that Officer Rhodes's initial investigation of his motor vehicle was an improper intrusion upon his reasonable expectation of privacy, constituting an unreasonable search for constitutional purposes. We find, to the contrary, that Officer Rhodes's initial entry onto the Ewer property was proper, given the suspicious circumstances existing at the time. While on afternoon patrol, Officer Rhodes observed the automobile, which he knew belonged to the Defendant, backed into the private driveway of the rural residence of the Ewer family. Given the officer's knowledge of the Defendant's involvement in past thefts, the relative newness of the house, and problems with break-ins in that particular area of the city, Officer Rhodes reasonably determined the need to investigate. His actions, in this instance, were nothing more than the proper, routine investigatory duties of a patrolling officer.

 Furthermore, the items inside the automobile, observed by Officer Rhodes through the windshield, were not at that moment the subject of a search; they were in plain view, easily seen from a vantage point open to the public. *See Arkansas v. Sanders*, 442 U.S. 753, 764 n.13, 99 S.Ct. 2586, 2593–94 n.13, 61 L.Ed.2d 235 (1979). Evidence in plain view discovered inadvertently by a police officer who has a legal justification to be where he is when he comes across the evidence, is subject to seizure. *Coolidge v. New Hampshire*, 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564 (1971). Evidence observed in such a manner is not the subject of a search. *See, e. g., State v. Poulin*, Me., 277 A.2d 493, 495 (1971); *State v. MacKenzie*, 161 Me. 123, 137–38, 210 A.2d 24, 32–33 (1965).

 We conclude that the Defendant had no justifiable privacy interest, given Officer Rhodes's proper entry onto the premises to investigate suspicious circumstances. We find, further, that the initial discovery of the items in the Defendant's automobile did not constitute a search. The Defendant cannot claim constitutional protection where "a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object." *Coolidge v. New Hampshire, supra* 403 U.S. at 466, 91 S.Ct. at 2038. *Cf. United States v. Lisk*, 559 F.2d 1108 (7th Cir. 1977) (inadvertent discovery of a pipe bomb).

The Defendant next contends that the police lacked probable cause to seize his automobile and its contents. At the time of Officer Rhodes's initial observation of the

---

**3.** Me.Const. Art. I, § 5 provides:

The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without a special designation of the place to be searched, and the person or thing to be seized, nor without probable cause—supported by oath or affirmation.

U.S.Const. Amend. IV states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**4.** In some instances only photographs of the stolen items were admitted into evidence.

items in the Defendant's vehicle, he was aware that those items matched the description of previously reported stolen goods. When Officer Rhodes returned to the automobile a second time after having watched the Defendant "hurriedly" do something inside his car, he saw that the Defendant had removed and attempted to conceal beneath the driver's seat a C. B. radio and a tape player, both of which Officer Rhodes suspected to be stolen property.

■■■ At the suppression hearing, the presiding justice found that the foregoing factors generated a reasonable belief on the part of Officer Rhodes that the items in the Defendant's automobile were stolen. A "reasonable belief" is the essence of probable cause. *State v. Walker*, Me., 341 A.2d 700, 703 (1975). In the landmark case of *Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 283, 69 L.Ed. 543 (1925), the United States Supreme Court addressed the "reasonable belief" which constitutes probable cause:

> [T]he true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.

Whether pursuant to a lawful search or where no search is necessary, a seizure must be founded on a reasonable belief that the property falls within a category of goods warranting seizure. *State v. McLain*, Me., 367 A.2d 213, 218 (1976); *see also Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967); *United States v. Balsamo*, 468 F.Supp. 1363, 1385 (D.Me.1979). Given the totality of circumstances of the instant case, the presiding justice's finding of probable cause, in that Officer Rhodes reasonably believed the items to be stolen, was not clearly erroneous. *See State v. Blais, supra* at 1256.

The Defendant finally argues that no exigent circumstances existed to justify the warrantless seizure of his automobile. We disagree. In *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) the United States Supreme Court established the "probable cause plus exigent circumstances test" as a part of the automobile exception to the warrant requirement of the Fourth Amendment to the United States Constitution. *See also State v. Mower*, Me., 407 A.2d 729, 731 (1979); *see generally* 8A *Moore's Federal Practice* ¶ 41.19 (2d ed. rev. 1981); Note, *The Automobile Exception to the Warrant Requirement: Speeding Away From the Fourth Amendment*, 82 W.Va.L.Rev. 637, 643, 663 (1980). The United States Supreme Court found that where both prongs of the test exist, an effective search without a warrant may have to be made immediately or "the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." *Chambers v. Maroney, supra*, 399 U.S. at 51, 90 S.Ct. at 1981. The Supreme Court went on to emphasize that

> [f]or constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

*Id.* at 52, 90 S.Ct. at 1981.

■■■ Having already determined that probable cause existed to support the warrantless seizure of the Defendant's automobile and its contents, our examination of the record also reveals sufficient exigent circumstances to invoke the automobile exception to the warrant requirement as defined by *Chambers*. The Defendant attempted to hide some of the stolen items in his automobile. He refused to turn over his car keys to the police. There existed the possibility of the Defendant removing the vehicle from the premises. Given the inherent mobility of the automobile together with the possibility of the evidence in it being removed, if not destroyed, the police officers involved

were justified in first seizing the vehicle and then obtaining a valid warrant before making a complete search and seizure of the automobile's contents at the station house. *See United States v. Chadwick*, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977).

### Admission of Photographs Into Evidence

The Defendant's second issue on appeal concerns the admission into evidence, over his seasonable objection, of photographs depicting several of the stolen items found in his automobile. The Defendant specifically argues that he was not properly provided with these photographs, pursuant to a discovery request, in accordance with M.R. Crim.P. 16(b).[5]

■■■ Notwithstanding the discoverability of photographs such as these, on appeal the burden is upon the Defendant-Appellant to prove that the State's failure to provide access to such exhibits was so prejudicial as to deprive him of a fair trial. *State v. LeClair*, Me., 382 A.2d 30, 33 (1978). The record must show that the Defendant was so unfairly surprised or prejudiced that the admission of the photographs into evidence constituted an abuse of discretion. *See State v. Rich*, Me., 395 A.2d 1123, 1130 (1978), *cert. denied,* 444 U.S. 854, 100 S.Ct. 110, 62 L.Ed. 71 (1979) (applying abuse of discretion standard where an unlisted witness is allowed to testify). There is no evidence to indicate that the Defendant was unfairly surprised or prejudiced by the admission of photographs not disclosed by the State at the request of the Defendant.

■■■ The basic purpose of Rule 16 of the Maine Rules of Criminal Procedure is "to eliminate concealment and surprise and to remedy the imbalance in the means of securing evidence." H. Glassman, *Maine Practice* § 16.2, at 136 (1967); *see also State v. Buzynski*, Me., 330 A.2d 422, 429 (1974). In the case before us the photographs were used simply to depict stolen property which had already been discovered by the Defendant. The photographs constituted merely cumulative evidence, and their admission into evidence caused no unfair prejudice or surprise to the Defendant. *See State v. Hathorne*, Me., 387 A.2d 9, 13–14 (1978).

### Permissible Inference of Guilt of Theft

The Defendant's third issue on appeal is that the Superior Court abused its discretion, he argues, in denying his motion for judgment of acquittal, he contending that the intervening period of one to nine weeks was insufficiently "recent" to warrant use of the "permissible inference" provided by 17–A M.R.S.A. § 361(2).[6] This section of our Criminal Code provides in pertinent part:

> Proof that the defendant was in exclusive possession of property that had *recently* been taken under circumstances constituting a violation of this chapter . . . shall give rise to a presumption that the defendant is guilty of the theft or robbery of the property . . . .

(emphasis added).

The Defendant does not contest his "exclusive" possession of the property; rather he asserts that the evidence failed to show that his possession was sufficiently "recent" to justify the inference of guilt.

We disagree. The Superior Court properly submitted the inference arising from section 361(2) to the jury for its consideration.

■■■ In *State v. McLain*, Me., 367 A.2d 213, 221 (1976), we explained that

> the amount of time elapsing after a larcenous act does not in itself determine

---

**5.** M.R.Crim.P. 16(b) provides in pertinent part:

(1) . . . Upon the defendant's written request, the attorney for the State, . . ., shall allow access at any reasonable time to those matters specified in subdivision (2) which are within the attorney for the State's possession or control . . . .

(2) . . . The following matters are discoverable:

(A) Any . . . photographs . . . which are material to the preparation of the defense or which the attorney for the State intends to use as evidence in chief at the trial . . . .

**6.** The items found in the Defendant's automobile by Officer Rhodes on April 2, 1979, were originally discovered missing by their respective owners on January 29, 1979, and on March 26 and 27, 1979.

whether possession is sufficiently recent to bring the inference into operation. Other factors to be considered, in addition to the passage of time, are the kind of stolen property involved, the amount and volume thereof, and the ease or difficulty with which it can pass into legitimate channels of trade.

The permissible inference of section 361(2) is not dependent upon an absolute time frame as to the length of possession following the theft of the property. The word "recently" is not a word of absolute meaning. Rather, the period of time in question is merely one relative factor to be considered by the jury in weighing the totality of the circumstances of each particular case. *See State v. James*, Me., 312 A.2d 531, 534 (1973); *State v. Gove*, Me., 289 A.2d 679, 682 (1972).[7]

 The specific period of time necessary to trigger application of what has been called the doctrine of "recent" possession is a question consistently left to the determination of the factfinder.[8] Moreover, the factfinder may properly convict a defendant in reliance on the permissible inference of section 361(2) "*alone*, if . . . [it] conclude[s] on all the evidence such inference is valid and *if the inference convinces [the factfinder] of guilt beyond a reasonable doubt and not otherwise.*" *State v. Poulin*, Me., 277 A.2d 493, 500 (1971) (emphasis in original).

 In the case before us the intervals of one week for some items, and nine weeks for others, between the thefts and the discovery of the property in the Defendant's possession, were not sufficient *per se* to preclude the jury's consideration of the inference permitted by section 361(2). We find that the evidence supports the Superior Court's denial of the Defendant's motion for judgment of acquittal.

*The Jury Instructions*

The Defendant's fourth issue on appeal is that the following jury instruction, to which he seasonably objected at trial, was prejudicial:

Now on property I should mention a few other things. On each case where theft of three or four things say is alleged, in any theft case, not just the ones you have here, but in any theft case where the exact amount of the alleged stolen property isn't spelled out in dollars and cents, then proof of any one of the objects alleged to have been stolen and proof that that object was of value, as I've described it to you, would be sufficient. The State doesn't have to prove all the items alleged on any one count but they have to prove one item was stolen.

The reason I mention that is that you might be confused if I didn't and you may have heard of other cases where in some theft cases they allege it to be of a certain value in excess of $500 or in excess of a thousand, which we don't have here. In those cases, I'll cover it under the statutes, then of course, the amount would become the controlling thing. But here you don't have that, you just have to find the State has convinced you beyond any reasonable doubt that one item of value, a I've described it, was, in fact, stolen.

The Defendant contends that such an instruction led the jury to infer that proof of

7. Other jurisdictions have uniformly held that "recently" is a relative term to be considered together with all the facts and circumstances of each case. *E. g., Hale v. United States*, 410 F.2d 147 (5th Cir.), *cert. denied*, 396 U.S. 902, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969); *People v. Giffis*, 218 Cal.App.2d 53, 32 Cal.Rptr. 215 (1963); *Butz v. State*, 221 Md. 68, 156 A.2d 423 (1959). *See generally* Annot., 89 A.L.R.3d 1202 (1979).

8. *See State v. James, supra* (stolen property found 33 days subsequent to burglary); *State v. Gove, supra* (interval of 59 days before theft items discovered). *See also Hardage v. State*, 552 S.W.2d 837 (Tex.Crim.1977) (discovery of tape recorder seven months after its theft); *Graham v. State*, 6 Md.App. 458, 251 A.2d 616 (1969) (two months sufficient for theft of a television); *State v. Blackmon*, 6 N.C.App. 66, 169 S.E.2d 472 (1969) (discovery of wrench in defendant's possession 27 days after theft); *State v. Oliver*, 355 Mo. 173, 195 S.W.2d 484 (1946) (stolen radio found three months after its removal from a dwelling house).

only one stolen item would be sufficient to convict on all four counts of theft.

The adequacy of any jury instruction must be determined "by reviewing the charge in its entirety rather than isolated extracts." *State v. Foster*, Me., 405 A.2d 726, 730 (1979). Having reviewed the instructions in their entirety, we agree that the jury may have been confused as to the requirement of proof of the individual counts and that, as given, the instruction was prejudicial to the Defendant.

The presiding justice should have clearly instructed the jury that each of the four counts must be separately tested, with the burden being upon the State to prove beyond a reasonable doubt that at least one item was stolen on each individual count.

We sustain the Defendant's appeal.

### Trial on the Ancillary Indictment for Theft

As the Defendant's final issue, he argues for the first time on appeal that he was denied a fair trial on the ancillary theft indictment in that the same jury which convicted him on the four counts of theft also decided the habitual theft matter. Whether due process requires that an entirely new jury hear the trial on the ancillary indictment is a question of first impression in this jurisdiction, given the present application of 15 M.R.S.A. § 757.[9]

The underlying purpose of section 757 is to possibly augment the sentence imposed on the primary conviction where a defendant is deemed to be a habitual offender. The proceeding on the ancillary indictment or complaint is not to establish guilt, but to establish whether a defendant has in fact been previously convicted of the offenses charged in the ancillary indictment. In the instant case, the jury's verdict in the second trial had the effect of raising the conviction on the principal offense from either a Class D or Class E crime to a Class C crime, *for the sole purpose of affecting the sentence imposed on the current principal offense.*

In proceedings where additional punishment is sought on the basis of prior convictions, the habitual criminality of a defendant is a status rather than a crime. Although the habitual offender is entitled to the same constitutional rights as are guaranteed to all criminal defendants, such guarantees do not include the right to have a separate jury decide the issue of habitual criminality for the purpose of possibly increasing sentencing.

Emphasizing that determining habitual criminality is for the sole purpose of increasing punishment, the United States Supreme Court recognized in *Chandler v. Fretag*, 348 U.S. 3, 8, 75 S.Ct. 1, 4, 99 L.Ed. 4 (1954), that both the principal offense and the habitual criminal charge may be tried before the same jury.

Likewise, in *Mottram v. State*, Me., 263 A.2d 715, 725 (1970), a postconviction habeas corpus proceeding, we observed that prior to the 1961 enactment of 15 M.R.S.A. § 757,[10] both the issue of primary guilt and the issue of prior convictions could be determined by the same jury:

> Petitioner's sixth claim alleges that the jury which found his prior conviction included four jurors who had previously that day sat as members of the jury which had found him guilty.... There was no constitutional sanction against the determination of both issues by an *entirely* same jury. (*Ingerson v. State*, 146 Me. 412, 82 A.2d 407 (1951)) and the statutory requirement of separate trials of the two issues came later. P.L. 1961 Chap. 268, sec. 2 [sic, § 1]

(emphasis in original).

On the record before us this Defendant was found guilty as charged on all four counts of theft by unauthorized taking. Then, in accordance with section 757, he was arraigned on the ancillary indictment for theft, Class C. The Defendant pleaded not guilty and indicated his wish to have a jury trial on the ancillary indictment. At trial the following day, the same jury which

---

9. *See* note 2 *supra*.

10. P.L. 1961, ch. 268, § 1.

returned a verdict of guilty of the principal offenses found the Defendant guilty on the ancillary indictment of having been convicted twice before of theft.[11]

■ Although 15 M.R.S.A. § 757 requires separate trials for the principal offense and the ancillary proceeding, we conclude that the use of the same jury for both trials did not deprive the Defendant of his right to a fair trial.

The entry is:

Appeal sustained.

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.

---

11. 17–A M.R.S.A. § 362 (Supp.1979) provides in pertinent part:

 3. Theft is a Class C crime if: ...

 B. The actor has been twice before convicted of ...: Theft ....