**STATE of Maine**

v.

**RYNE G.**

Supreme Judicial Court of Maine.

Argued Jan. 16, 1985.

Decided May 22, 1986.

R. Christopher Almy, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Vafiades, Brountas & Kominsky, Charles E. Gilbert, (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

Ryne G. (Ryne) appeals from a judgment of the Superior Court (Penobscot County) denying his appeal from adjudications of the District Court (Bangor), sitting as the juvenile court, finding him guilty of one count of operating while under the influence of intoxicating liquor or drugs, 29 M.R.S.A. § 1312–B (Supp.1983–1984), and two counts of vehicular manslaughter (Class B), 17–A M.R.S.A. § 203 (Pamph. 1982). On appeal he contends that the

juvenile court[1] erred in 1) denying his motion to suppress the results of a breath test taken pursuant to 29 M.R.S.A. § 2241-G(2)(B) (Supp.1983-1984); 2) admitting a statement, made by a witness prior to the automobile accident, as to Ryne's inability to drive; 3) excluding Ryne's statement to the investigating officer that the accident occurred because a passenger had placed her foot on the accelerator; and 4) denying his motion for judgment of acquittal of the manslaughter offenses. Finding no error, we affirm the judgment.

## I.

Upon the evidence before it, the juvenile court would have been warranted in finding that on the evening of December 27, 1983, seventeen-year-old Ryne drove three friends to the D.A.V. Hall on outer Essex Street in Bangor, where a group of young people had gathered to decorate the hall for a holiday party. On the way, one of the passengers purchased a case of beer. Ryne consumed six or seven twelve-ounce beers during the evening.

At about midnight, Ryne, with four others, left the hall in Ryne's station wagon to return on Essex Street toward downtown Bangor. Ryne knew that the street was icy. Prior to the accident, the car was traveling approximately forty-five miles per hour.

The Bangor police were called to the accident at 12:22 a.m. Officer Robert Welch, responding to the call, found that the station wagon had hit a pole and had sustained extensive damage. While other officers attended to the four passengers who were still inside the car, Officer Welch spoke to bystanders and to Ryne. Ryne stated he had been operating the station wagon, and at the officer's request, produced his operator's license. Officer Welch observed that Ryne's eyes appeared glassy and he detected an odor, although not a strong one, of an intoxicating beverage on Ryne's breath. Based on his observations, the officer concluded that Ryne's blood alcohol was above .02%. Therefore, pursuant to 29 M.R.S.A. § 2241-G(2)(B),[2] he asked him to go to the police station to take a blood or breath test.

At the station, after Officer Welch read to Ryne the warnings provided in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the implied consent provision applicable to the ".02 Law," Ryne chose to take a breath test. The test yielded a blood-alcohol content of .165%. Officer Welch took Ryne back to the accident

1. Because the Superior Court acted as an appellate court, no presumptive validity attaches to its order, and this court undertakes a direct review of the original adjudication. *See State v. Michael Z.,* 427 A.2d 476, 477 (Me.1981).

2. 29 M.R.S.A. § 2241-G(2)(B) (Supp.1983-1984), *repealed and replaced by* P.L.1983, ch. 850, § 4 (effective May 2, 1984), also known as the ".02 Law," provided in pertinent part:

The Secretary of State shall suspend for a minimum period of one year, without preliminary hearing, the provisional license of any person under 20 years of age:
　(1) As to whom there is received a record of conviction or adjudication for violation of section 1312-B or 1312-C or Title 15, section 3103, subsection 1, paragraph F; or
　(2) As to whom there is received the result of a test to determine his blood-alcohol level which shows the presence of 0.02% or more by weight of alcohol in his blood.
Any person not having attained the age of 20 years who operates or attempts to operate a motor vehicle within this State shall, in addi-

tion to the requirements of section 1312, have the duty to submit to a test to determine his blood-alcohol level by analysis of his blood or breath, if there is probable cause to believe he has operated or attempted to operate a motor vehicle while having 0.02% or more by weight of alcohol in his blood. The provisions of section 1312 shall apply, except that in all cases probable cause shall be to believe that the person was operating or attempting to operate a motor vehicle while having 0.02% or more by weight of alcohol in his blood and that the suspension for failing to comply with the duty to submit to the test shall be for a period of one year.
The provisions of section 1312, subsection 6, shall apply, except that probable cause shall be to believe that the person was operating or attempting to operate a motor vehicle while having 0.02% or more by weight of alcohol in his blood.

scene, where they learned that there had been a fatality.[3] Officer Welch then returned Ryne to the police station where he was placed under arrest, booked, and released to the custody of his father.

Ryne seasonably moved to suppress the results of the breath test. At the suppression hearing, the investigating officer testified that he had felt he had probable cause to believe that the defendant had been operating with greater than .02% blood-alcohol level. The juvenile court denied the motion. After trial, the court found that Ryne had committed the juvenile offenses of operating under the influence and vehicular manslaughter. The Superior Court denied Ryne's appeal from the juvenile court adjudications. This appeal followed.

## II.

■ In support of his contention that the court erred in denying his motion to suppress, Ryne first argues that the legislature never intended that the results of a blood-alcohol test obtained pursuant to 29 M.R.S.A. § 2241–G would be admissible in a criminal proceeding. He asserts further that because the investigating officer did not have probable cause to believe that Ryne's blood-alcohol level exceeded .10% or more under 29 M.R.S.A. § 1312,[4] suppression of the blood alcohol test results was constitutionally mandated. We disagree.

Ryne does not claim that the blood-alcohol test was not conducted in compliance with the statutory requirements of section 2241–G. Nor does he challenge the constitutionality of the test itself and the suspension provisions of section 2241–G. Here, the result of the blood-alcohol test was lawfully obtained in accordance with the provisions of section 2241–G. Its relevancy is unquestioned. The admissibility of lawfully obtained evidence is governed by the Maine Rules of Evidence, and if relevant and not excluded thereunder, such evidence is admissible against a defendant in a subsequent trial. *See* M.R. Evid. 402.

By providing a procedural vehicle for a more expeditious suspension of the license of a juvenile who drinks and drives, the Legislature could not have intended to insulate that juvenile from prosecution for the consequences that may flow from that conduct. In *State v. Adams,* 457 A.2d 416, 419 (Me.1983), we noted that:

> From our analysis of the total legislation relating to the operation of motor vehicles by persons under the influence of intoxicating liquor, it is our opinion that the legislature has established a firm general policy of admissibility of blood-alcohol tests in its battle against the potential highway killer, the driver under the influence.

Unconditional exclusion from a criminal prosecution of relevant evidence obtained in the course of a lawful search is inconsistent with the general policy in favor of the admissibility of blood-alcohol test results. It is also inconsistent with our prior decisions that evidence of criminal activity lawfully but inadvertently acquired by proper, routine investigation of a patrolling officer is admissible when the investigation was triggered by less than probable cause. *See, e.g., State v. Sapiel,* 432 A.2d 1262 (Me.1981);[5] *see also Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (defendant cannot claim constitutional protection when "a police officer is not searching for evidence against the accused, but none-

---

**3.** Another passenger later died as a result of the accident.

**4.** Section 1312(5)(C) then in effect provided:

> If there was, at the time alleged, 0.10% or more by weight of alcohol in the defendant's blood, it is prima facie evidence that the defendant was under the influence of intoxicating liquor within the meaning of this section.

**5.** Based on reasonable suspicion, the officer in *Sapiel* properly entered a private driveway, where he inadvertently discovered incriminating objects in plain view in an automobile parked there. 432 A.2d at 1266. Evidence of theft thus lawfully discovered by an officer acting on the basis of less than probable cause was admissible in a subsequent criminal prosecution.

theless inadvertently comes across an incriminating object"); *State v. Tully*, 166 Conn. 126, 348 A.2d 603, 609 (1974) (evidence of criminal narcotics violation discovered while officer lawfully exercising "community caretaking function" admissible in criminal prosecution when officer's act of removing guitar from car parked in high crime district was "totally divorced from detection, investigation, or acquisition of evidence relating to violation of criminal statute").

The defendant's reliance on *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 499, 56 L.Ed.2d 486 (1978) is misplaced.[6] The Court there held the search conducted several days after the fire was extinguished unreasonable, because it was undertaken by arson investigators absent consent, or administrative warrant, or exigent circumstances. Unlike the results of the search in *Tyler*, the test results here were lawfully obtained, pursuant to a legal search. Contrary to Ryne's assertions, the lawful nature of the search cannot be rendered unlawful by the subsequent use of the evidence against him in the juvenile court proceedings. When a search has been validly conducted for a legal purpose, as is the case here, any incriminating evidence thereby discovered is admissible in a subsequent criminal trial. *See, e.g., United States v. Jamieson-McKenna Pharmaceuticals*, 651 F.2d 532, 542 (8th Cir.1981); *see also New York v. Class*, —— U.S. ——, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) (evidence of gun admissible in criminal proceeding when discovered in course of legal search for vehicle identification number on dashboard of car stopped after police observed traffic offenses by driver); *United States v. Skip-*

*with*, 482 F.2d 1272, 1278 (5th Cir.1973) (evidence of drug possession admissible in criminal prosecution when discovered in course of screening boarding passengers for weapons because discovery of narcotics on defendant's person was product of lawful police work and "all that matters is search be legally conducted").

Accordingly, because the relevant evidence was legally secured pursuant to a valid search it was admissible in the subsequent criminal proceeding. The juvenile court properly denied Ryne's motion to suppress the result of the blood-alcohol test.

### III.

■ Ryne next contends that the court erred in permitting John C. to testify to a statement he had made describing Ryne's condition before he left the D.A.V. Hall. At trial, over Ryne's objection that the evidence was hearsay, the court permitted John C. to testify that, upon learning of Ryne's intention to leave the gathering, he pointed to Ryne and stated to Shawn L., "Look at him, he can't drive." Although the juvenile court did not specify the basis for ruling that the statement was admissible, the Superior Court upheld the ruling on the ground that it was a present-sense impression under M.R. Evid. 803(1).[7]

The statement at issue falls squarely within the language of M.R. Evid. 803(1): John C was describing a condition while he was perceiving it. Indeed, the very theory behind this exception to the hearsay rule is that a statement which is substantially contemporaneous to the event being described is more unlikely to be a deliberate or conscious misrepresentation. Field & Murray,

---

6. *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), may also be distinguished because the searches there were conducted pursuant to an administrative inspection program and a statute, respectively, that the Court held unconstitutional. Here the test results were obtained pursuant to a valid statutory procedure, the constitutionality of which has not been challenged.

7. M.R.Evid. 803(1) provides:
   The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
   A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

*Maine Evidence,* § 803.1 at 209 (1976).[8] The juvenile court properly admitted the evidence.

## IV.

■ Ryne further contends that the juvenile court erroneously excluded Ryne's statement about the cause of the accident. At trial Ryne attempted to elicit from Officer Welch testimony that at the scene of the accident Ryne had told him the accident had happened because a front seat passenger had put her foot on the gas pedal. The testimony was offered as a present sense impression (M.R. Evid. 803(1)) and as an excited utterance (M.R. Evid. 803(2)). The juvenile court ruled that the statement did not qualify within either of those hearsay exceptions.

As we noted above, substantial contemporaneity is the essence of the exception provided in Rule 803(1). Ryne's statement was made approximately seven minutes after the accident occurred. He had been standing outside the wrecked car for several minutes before the police arrived and, upon their arrival, did not immediately come forward. The trial court's determination of whether a statement falls within an exception to the hearsay rule will not be reversed except for an abuse of discretion. M.R. Evid. 104(a); *State v. Williams,* 395 A.2d 1158, 1162–63 (Me.1978). Here, the court properly exercised its discretion in ruling that Ryne's statement was not a present sense impression as required by M.R. Evid. 803(1).

Ryne further argues that the court erred in refusing to admit the statement as an "excited utterance" under M.R. Evid. 803(2).[9] In ruling on the admissibility of a statement under this rule, the trial court determines if (1) the statement related to a startling event or condition, and (2) the defendant made the statement while under the stress of excitement caused by a startling event or condition. *State v. Hafford,* 410 A.2d 219, 220 (Me.1980). The ruling of the trial court as to the admissibility of the statement will not be disturbed unless its determination is clearly erroneous. *See* M.R. Evid. 403; *Hafford,* 410 A.2d at 220; *State v. Williams,* 395 A.2d at 1161, 1163.

The juvenile court could appropriately have found from the evidence that Ryne's statement was not made under the stress of the excitement caused by the accident. The facts suggest that Ryne had an opportunity for reflection and fabrication, which is exactly what this exception to the hearsay rule is designed to forestall. *See* Field & Murray, § 803.2, at 210. The juvenile court properly exercised its discretion in finding that the statement did not qualify as an excited utterance.

## V.

■ The record discloses ample evidence to support the juvenile court's finding that Ryne was guilty beyond a reasonable doubt of vehicular manslaughter. Accordingly, we find no merit to Ryne's final contention that the court erred in denying his motions for judgment of acquittal of these offenses.

The entry is:

Judgment affirmed.

McKUSICK, C.J., and WATHEN, J., concurring.

NICHOLS and SCOLNIK, Justices, dissenting.

Because we are persuaded that 29 M.R. S.A. § 2241–G is unconstitutional in that it authorizes a search that violates the fourth

---

8. *See also State v. Gervais,* 394 A.2d 1183 (Me. 1978) (police officers radioed statements about spotting, overtaking, and stopping the suspect's car qualified as admissible present sense impression); *State v. Williams,* 395 A.2d 1158 (Me. 1978) (no evidence that a victim's statements that a man was chasing her was sufficiently contemporaneous).

9. The full text of M.R.Evid. 803(2) is:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

amendment of the United States Constitution, we respectfully dissent.

Although a search authorized by 29 M.R.S.A. § 2241–G (Supp.1983–1984), repealed and replaced by P.L. 1983, ch. 850, § 4 (effective May 2, 1984), may have a valid administrative purpose, that fact alone does not compel a conclusion that such a search is reasonable under the fourth amendment. Other factors associated with the search demonstrate that despite its administrative purpose, it involves much more than the relatively limited invasion of one's privacy interest that traditionally serves as a justification for allowing administrative searches to be undertaken on a less than probable cause standard. Since the search authorized by section 2241–G constitutes practically the same invasion of a person's privacy interest as that found in a search for evidence of criminal conduct, it follows that under the fourth amendment, the search is to be governed by the same rigorous standards that are applied to searches for evidence of a crime. Thus, because the statute challenged in this appeal purports to authorize a search that is not based on probable cause to believe a crime has been committed, the search in this case was unreasonable and the fruits obtained therefrom must be suppressed. Further, since section 2241 purports to authorize what the Constitution prohibits, the statute itself must be declared unconstitutional.[1]

It is not disputed that the police officer's conduct in obtaining a sample of blood constituted a search and seizure of the juvenile's person. *See, e.g., Schmerber v. California,* 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966). We have repeatedly stated that searches or seizures conducted without a warrant are *per se* unreasonable, except for a few carefully drawn and most guarded exceptions. *State v. Rand,* 430 A.2d 808, 817 (Me.1981); *State v. Johnson,* 413 A.2d 931, 933 (Me. 1980). If, for example, law enforcement officers have knowledge of facts supporting a proper determination of probable cause, the warrant requirement may be waived if there are exigent circumstances that require a prompt search. *State v. Baker,* 502 A.2d 489, 493 (Me.1985); *State v. Libby,* 453 A.2d 481, 484 (Me.1982).

In this case, the police officer's search of the juvenile was neither executed pursuant to a warrant nor was it based on probable cause to believe that a crime had been committed and that evidence of the crime would be found in the place to be searched. The purpose of the search was to determine the juvenile's blood-alcohol level. Pursuant to section 2241–G, operating a motor vehicle when one's blood alcohol level is 0.02% or greater by one under the age of twenty subjects the operator to an administrative sanction of a license suspension for one year. It is not a crime. Under 29 M.R.S.A. § 1312 (Supp.1983–1984), however, the same test, if 0.10% or greater, exposes the driver to criminal penalties, namely, a maximum fine of not less than $300 and a license suspension for ninety days. Any suspension imposed under section 2241–G runs concurrently with any court ordered suspension for violation of section 1312. Before administering a blood test pursuant to section 2241–G, the investigating officer need not have probable cause to believe a crime has been committed; rather, the statute requires that he need only have probable cause to believe that the individual was operating with greater than a .02% blood-alcohol level. The critical issue is whether the search authorized by section 2241–G on a less than probable cause standard, as that term is used in the criminal sense, is reasonable and thus consistent with the fourth amendment. *Cf. State v. Freeman,* 487 A.2d 1175, 1177 (Me.1985) (labeling as "civil" an offense that is criminal in nature ineffectual to achieve legislative purpose of creating civil infraction).

---

**1.** We note that section 2241–G is not here challenged as a violation of the Equal Protection Clause. We therefore restrict our treatment of the issue to the context of the fourth amendment.

Recognizing the important distinction between criminal and administrative searches, the United States Supreme Court has observed that searches carried out for administrative purposes without probable cause in the criminal sense can nevertheless be reasonable. For instance, in *Camara v. Municipal Court*, 387 U.S. 523, 537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967), the Court declared that probable cause is not required in order for routine searches of private dwellings by housing inspectors for possible violations of a housing code to be reasonable under the fourth amendment. In adopting a "reasonable legislative or administrative standard" for· inspection warrants, the Court reasoned that "because the inspections are *neither personal in nature nor aimed at the discovery of evidence of crime, they involve a relatively limited invasion of [a] citizen's privacy.*" *Id.* (emphasis added). Subsequent cases similarly recognize that the rationale for allowing administrative searches on a less than probable cause standard is that such searches intrude into areas where individuals have a significantly decreased expectation of privacy and are carried out by non-police personnel who have been delegated little criminal law enforcement authority. *See, e.g., New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 743–45, 83 L.Ed.2d 720 (1985) (search of student by a teacher and other school officials); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312–13, 98 S.Ct. 1816, 1820–21, 56 L.Ed.2d 305 (1978) (search of commercial property by OSHA inspectors); *Michigan v. Tyler*, 436 U.S. 499, 506, 98 S.Ct. 1942, 1948, 56 L.Ed.2d 486 (1978) (search of privately owned premises by fireman to battle a fire); *see also Donovan v. Dewey*, 452 U.S. 594, 598–99, 101 S.Ct. 2534, 2537–38, 69 L.Ed.2d 262 (1981) ("The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's house, and that this privacy interest may, in certain

circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections."). Thus, a statute that authorizes a search not based on probable cause is reasonable if the search is for a valid administrative purpose, is neither personal in nature nor aimed at the discovery of evidence of a crime, and involves a minimal invasion of a person's reasonable expectation of privacy.

Applying these principles to the present case, it is clear that the search of the juvenile authorized by section 2241–G is unreasonable. Unlike cases involving administrative searches, the present case involves the search of a person, not of property; it is carried out by a police officer, not an administrative official; the search is not pursuant to a warrant; the evidence to be obtained can expose the person searched to a criminal prosecution; and it involves a significant intrusion into a person's reasonable expectation of privacy. In fact, the intrusion of the juvenile's privacy interest is similar to that found in a search pursuant to section 2241–G's criminal counterpart, section 1312. This is plainly demonstrated by the facts of the case before us. The investigating police officer transported the juvenile to a police station. There he read to the juvenile his "Miranda" rights as well as the implied consent form applicable to section 1312. These characteristics of the search authorized by section 2241–G clearly reveal that such a search is not a limited invasion of a person's privacy. It cannot be argued that there is any diminution of the juvenile's reasonable expectation of privacy merely because the search was ostensibly made pursuant to the .02 law, section 2241–G, rather than section 1312, the operating under the influence (OUI) law. In *Marshall v. Barlow's, Inc.*, 436 U.S. at 312–13, 98 S.Ct. at 1820–21, the Supreme Court recognized that a person's privacy interest suffers the same intrusion whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards. Moreover, depending on the

test result, the evidence the police officer sought to obtain pursuant to section 2241–G could serve as a basis for a criminal prosecution under section 1312. In these circumstances, it matters little that the police officer may not expect evidence of a criminal OUI to be generated by the taking of the test because the constitutional safeguard against an unreasonable search and seizure does not depend on the fortuity of that test result. Taken together, when weighed against the valid administrative purpose of the statute, these factors compel the conclusion that the search authorized by section 2241–G is unreasonable under the fourth amendment. *See Parrish v. Civil Service Comm'n*, 66 Cal.2d 260, 267, 425 P.2d 223, 228, 57 Cal.Rptr. 623, 628, (1967) (though searches by county welfare officials intended to secure proof of welfare ineligibility, fact that sought-after evidence could have afforded basis for criminal prosecution imposed requirement for compliance with standards for searches for evidence of crime).

In sum, section 2241–G is unconstitutional because it purports to authorize what the fourth amendment prohibits. To satisfy constitutional requirements, a search in these circumstances must comply with the probable cause standard applicable to searches for evidence of criminal activity. Since the police officer's search in this case was not based on probable cause to believe a crime had been committed, the relevant evidence was illegally obtained. As a result, the illegally obtained evidence must be suppressed in this criminal proceeding.

We reject the majority's overly technical view that since the juvenile did not in so many words challenge the constitutionality of the statute, it is immune from scrutiny. Such a narrow approach ignores the fact that a challenge to the constitutionality of the search itself, carried out pursuant to section 2241–G, constitutes an attack on the validity of the statute. *See Ybarra v. Illinois*, 444 U.S. 85, 89–97, 100 S.Ct. 338, 341–45, 62 L.Ed.2d 238 (1979); *Torres v. Puerto Rico*, 442 U.S. 465, 471, 99 S.Ct.

2425, 2429–30, 61 L.Ed.2d 1 (1979); *Almeida-Sanchez v. United States*, 413 U.S. 266, 267–73, 93 S.Ct. 2535, 2536–40, 37 L.Ed.2d 596 (1973); *Sibron v. New York*, 392 U.S. 40, 62–65, 88 S.Ct. 1889, 1902–04, 20 L.Ed.2d 917 (1968). Since section 2241–G purports to authorize a search that is impermissible under the fourth amendment, we submit that the statute must be declared unconstitutional.

Accordingly, we would vacate the judgment of the Superior Court and remand with instructions to vacate the adjudications and remand to the juvenile court for a new trial.